THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY EVERETT, Defendant-Appellant.

First District (4th Division)   No. 1—89—0797

Opinion filed April 16, 1992.

Willis E. Brown, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and John J. Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

On April 6, 1987, a Cook County grand jury indicted defendant Terry Everett and codefendant Jarvis Hollingsworth for murder, armed violence, conspiracy, and solicitation. Defendant's first jury trial resulted in a conviction for conspiracy. Yet, the jury was unable to reach a verdict as to the murder count and a mistrial resulted. After a second jury trial in the circuit court of Cook County, defendant was convicted of murder and solicitation. He was sentenced to concurrent terms of imprisonment of 40 years for murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1), 15 years for solicitation (Ill. Rev. Stat. 1987, ch. 38, par. 8—1.1), and 7 years for conspiracy (Ill. Rev. Stat. 1987, ch. 38, par. 8—2). The sentences imposed were consecutive to a 12-year term of imprisonment imposed for attempted murder in case No. 87—CR—2270.

We affirm.

On January 28, 1987, Darryl Walker was fatally wounded from multiple gunshot wounds inflicted by Jarvis Hollingsworth. Three days prior to the murder, defendant told his girl friend, Dawn Benson, that he was angry with the victim for stealing his VCR. He learned that his VCR was used to obtain a quantity of cocaine. Further, he told Benson that he could have the victim killed for $200. Two days later, while defendant and Benson were in defendant's apartment, Hollingsworth arrived. Benson overheard the conversation between defendant and Hollingsworth concerning a gun and bullets. Specifically, Hollingsworth told defendant that he had a gun and

planned to kill the victim. Hollingsworth was arrested for the murder of Walker on March 30, 1987. He was identified by Herman Holmes and Darryl Pledger. Upon being interviewed, Hollingsworth implicated defendant, Terry Everett.

Defendant was arrested by Chicago police detectives John Duffy, Michael Rowan, and Ernest Bell. In an interview room at the police station, he was questioned by Officers Duffy and Rowan. Defendant alleges that during questioning he was not allowed to use the bathroom, drink water, or contact his attorney. He claims that the officers did not allow him to telephone his attorney because he refused to give a statement. Questioning ceased sometime between 5 and 6 p.m., and defendant was then taken to the lockup. Defendant alleges that he was not given any food. He also alleges that he was not allowed to make a telephone call until 1 a.m. the next morning. The assistant State's Attorney arrived later that morning whereupon defendant was given his *Miranda* rights, questioned, and formally charged.

The State's version of the questioning differs from that of defendant. According to the State, defendant was arrested by Detectives Rowan, Duffy, and Bell. Detective Rowan advised defendant of his *Miranda* rights. Defendant said he understood and spoke with detectives for 30 to 35 minutes. The police received defendant's permission to conduct a search of his automobile provided that defendant could be present. When a .32 caliber revolver was recovered, defendant said, "You can check that gun. That isn't the gun that killed 'D.J.' [the victim]."

After the vehicle search, defendant returned to Area 2 with the officers at about 4:15 p.m. He was returned to the interview room and, around 5 p.m., questioning resumed. At 5:45 p.m., defendant was placed in the lockup. At 5:50 p.m., defendant telephoned his girl friend and concocted a story for her to tell the police about what had happened the day the victim was killed.

Defendant was taken from the lockup to a conference room between 11:15 and 11:45 p.m. He was given his *Miranda* warnings by Detective Rowan. The defendant was informed that other witnesses had been questioned, including Benson. Defendant stated that he did not shoot the victim himself but would tell the police the events that took place on the morning in question.

According to the officers, defendant discussed the events for 45 minutes. Then the officers left to get food for defendant and themselves. Upon their return, defendant gave them an attorney's business card and said, "I would like to call this man." Defendant contacted attorney Marshall Weinburg between 12:50 and 1 a.m. and told him of

the statement he had made to the police. Mr. Weinburg responded, "Why are you calling me now after you made the statement[?]" The assistant State's Attorney introduced himself to defendant sometime between 2:45 and 3 a.m. and advised defendant of his rights. Defendant responded that he was advised by his attorney not to speak. Later he claimed that his statements were the result of police coercion.

There were several key witnesses for the State at the first trial. Herman Holmes shared an apartment with the victim. Holmes testified that he was awakened early on the morning of January 28, 1987, by a knock at the door. He allowed Hollingsworth to enter. Later the apartment door closed and the victim and Hollingsworth were gone. Holmes was again awakened by a second knock at the door. It was Darryl Pledger, his uncle. Holmes and his uncle left his apartment to go across the street and there saw the victim's body.

Darryl Pledger testified that he awakened at 3:15 a.m. when he heard the door to a nearby apartment open and close. Within 10 minutes, he heard a pair of gunshots and from his window saw the body of a man lying in the middle of 92nd Street, just east of Halsted Street. Defendant alleges that both Holmes and Pledger were reluctant to testify before the grand jury. Holmes said he did so only after being threatened with jail on the charge of perjury.

Dawn Benson, defendant's former girl friend, testified that she was present when defendant and Hollingsworth returned to the apartment at 4 a.m. The witness stated that she overheard Hollingsworth say that he had killed Darryl Walker. During an argument between defendant and Benson on January 31, 1987, he pointed a gun at her, telling Benson that she "knew too much." Benson responded that she would not tell anyone that he had killed Walker. Benson further testified as to what defendant told her about the events that led to the murder. Defendant and Hollingsworth left the apartment, and Hollingsworth went to the victim's house. They left together and went to a nearby alley where Hollingsworth shot the victim twice. Defendant was in a parked car around the corner and saw Hollingsworth flee the alley. He also saw the victim leave the alley. When the victim fell, defendant then ran over him with his car to ensure that he was dead. Benson also testified that defendant stated that he had paid Hollingsworth for his role in the killing with $200 and a quantity of cocaine.

Defendant alleges that Benson was picked up by the police officers late in the evening on March 31, 1987, and that she was also the victim of police coercion. He bases his allegation on Benson's testimony that she was informed by the police that she could be charged

with "accessory to murder." Further, the witness was kept in police custody until she testified before the grand jury the next morning.

Dr. Kirschner, deputy chief medical examiner of Cook County, performed an autopsy on the victim's body on January 28, 1987. He was qualified as an expert in the field of forensic pathology. The expert witness had performed hundreds of autopsies involving blunt trauma inflicted by motor vehicles. Dr. Kirschner stated that of the two gunshot wounds, the first gunshot wound was fatal. He testified concerning the blunt trauma injuries to the victim's head. He found two parallel-type abrasions running from the victim's left arm to his back. There were also corresponding tears in the left sleeve of each article of clothing worn by defendant. Dr. Kirschner's findings concerning the injuries, abrasions and torn clothing led him to conclude that the victim was struck a glancing blow by an automobile bumper or fender while lying down.

On appeal, defendant contends that (1) the evidence and accountability theory used by the prosecution did not prove him guilty beyond a reasonable doubt; (2) the testimony of some of the State's witnesses was due to improper influence by the police; and (3) his statement was a result of police coercion and denial of right to counsel. We disagree.

Defendant contends that the evidence used to find him guilty beyond a reasonable doubt was insufficient. The standard of review for this type of challenge was recently explained by the Illinois Supreme Court. It stated the following:

> "When faced with a challenge to the sufficiency of the evidence, it is not this court's function to retry the defendant. [Citations.] Rather, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis in original.) (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) In addition, 'upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' (Emphasis in original.) 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789." *People v. Illgen* (1991), 145 Ill. 2d 353, 376.

In this case, defendant's oral confession was corroborated by the testimony of the State's witnesses. Defendant's girl friend testified as to what she overheard between defendant and Hollingsworth, the person hired to actually carry out the murder. Further, she testified as to

the details of the incident based on admissions made to her by defendant, himself.

There was testimony by Holmes, who shared an apartment with the victim. He was awakened when Hollingsworth and the victim left the apartment. Darryl Pledger, Holmes' uncle, also testified about hearing a pair of gunshots in the early hours of the morning. He and Holmes later identified the victim's body as it lay in the street.

Finally, there was the testimony of the State's expert witness, Dr. Kirschner. His conclusions on the manner in which the victim was killed were corroborated by defendant's oral confession. Dr. Kirschner's autopsy revealed that the gunshot wounds would have killed the victim. However, after examining the victim's clothing, injuries and abrasions, it was clear that the victim was also struck by an automobile while lying down. Defendant admitted running over the victim as he lay facedown in the street.

Defendant argues that the evidence presented by the State is insufficient to convict based on a theory of accountability. By statutory law, a person is legally accountable for the conduct of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1987, ch. 38, par. 5—2(c).) Courts look at the circumstances surrounding the incident in question to determine whether there was a shared criminal intent between the principal and defendant or whether there was a common design of unlawful purpose. *People v. Foster* (1990), 198 Ill. App. 3d 986, 993.

Here there was substantial evidence that defendant and Hollingsworth planned the murder together. Defendant attempted to provide Hollingsworth with bullets for the designated gun. Defendant even ran over the victim to ensure his death. Given the evidence presented, the jury was able to find defendant legally accountable for the murder, and we see no reason to disturb this finding. "A trier of fact's conclusion that a defendant is legally accountable for a criminal act will not be set aside on review unless the evidence is so improbable, unsatisfactory, or unreasonable that a reasonable doubt of the defendant's guilt exists." *Foster*, 198 Ill. App. 3d at 993.

Defendant argues that Holmes, Pledger, and Benson, three of the State's witnesses, were reluctant to testify. He alleges that Holmes and Pledger had a fear of being charged with perjury. Defendant contends that Benson's testimony should be viewed with suspicion because she was kept at the police station until she testified before the

grand jury and was informed that she could be "charged with accessory to murder."

Defendant's argument does not adequately recognize the role of the jury in assessing the validity of the testimony, given the motivations and biases of each witness. The importance of the jury's role in assessing credibility was discussed in *People v. Carter* (1988), 168 Ill. App. 3d 237. In that case, the court stated: "The jury determined the credibility of and the weight to be given each witness, and the jury was aware of all inconsistencies and possible motivations for testifying." (*Carter*, 168 Ill. App. 3d at 245.) Here, the jury listened to the evidence, made its deliberations and found defendant guilty. This is the function of the jury and it cannot be usurped by this court. We find the evidence was not so improbable as to justify a reasonable doubt of defendant's guilt. See *Carter*, 168 Ill. App. 3d at 245.

■ Another aspect of defendant's claim that there is insufficient evidence against him stems from the State's failure to produce the testimony of Jarvis Hollingsworth, the previously convicted codefendant. The Illinois Supreme Court responded to such a claim as follows: "The State is not obligated to produce every witness to a crime and the failure to produce a witness does not give rise to a presumption that the testimony of that witness would be unfavorable to the prosecution." *People v. Jones* (1964), 30 Ill. 2d 186, 190.

Further, Hollingsworth's case was pending appeal at the time of defendant's trial. Since there was no incentive for him to do otherwise, Hollingsworth would have been compelled to claim his fifth amendment privilege before the jury. The State was not obliged to call Hollingsworth as a witness and engage in conduct that may have constituted reversible error. (*People v. Myers* (1966), 35 Ill. 2d 311, 334.) This type of conduct was discussed in a recent case: "It has been often held that it is improper for a party to call a witness if the party has reason to believe that the witness will invoke his fifth amendment privilege against self-incrimination before the jury." *People v. Eiland* (1991), 217 Ill. App. 3d 250, 262, citing *People v. Myers* (1966), 35 Ill. 2d 311, 334.

■ Defendant argues that the statement he gave while in custody should be inadmissible. He alleges that he was denied his right to counsel and was subject to police coercion while in custody. The burden of proof and standard of review in determining whether a confession was voluntary are as follows:

> "Where a defendant raises the issue, the State must prove by a preponderance of the evidence that a confession was voluntary. (*People v. Clark* (1986), 114 Ill. 2d 450, 501 N.E.2d 123.)

Whether a statement is voluntary depends upon the totality of the circumstances. The test is whether the statement was made freely, voluntarily and without compulsion or inducement of any sort, or whether the defendant's will was overcome at the time of the confession. (*Clark*, 114 Ill. 2d at 457.) The trial court's finding that a confession was voluntary will not be disturbed unless it is contrary to the manifest weight of the evidence. (*People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601.)" *People v. Hubbard* (1991), 222 Ill. App. 3d 605, 610.

At the trial, the testimony of the detectives as well as that of defendant was heard. From the evidence heard, the trial court found that defendant's oral confession was voluntary. The record shows that he was given an opportunity to exercise his right to counsel but instead chose to call his girl friend, Dawn Benson. Further, there was evidence that defendant was provided food and drink. We hold that the trial court's finding that defendant's statement was voluntary was not contrary to the manifest weight of the evidence.

For the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.