Terry EVERETT, Petitioner–Appellant,

v.

Paul BARNETT, Respondent–Appellee.

No. 97–2565.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1998.

Decided Dec. 4, 1998.

Francis C. Lipuma (argued), Chicago, IL, for Petitioner–Appellant.

Michael M. Glick (argued), Office of the Attorney General, Chicago, IL, for Respondent–Appellee.

Before COFFEY, RIPPLE, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Terry Everett appeals from the denial of his petition for a writ of habeas corpus.

On April 6, 1987, Jarvis Hollingsworth and Everett were indicted for murder, conspiracy, armed violence, and solicitation of murder, growing out of the death of Darryl Walker on January 28, 1987. It is undisputed that Hollingsworth is the one who actually pulled the trigger. But 3 days before the murder, Everett told his girl friend, Dawn Benson, that he was angry with Walker for stealing his VCR and using it to obtain cocaine, and that he would have Walker killed for $200. Hollingsworth was arrested on March 30 and implicated Everett in the scheme.

At about 11 a.m. on March 31, 1987, Everett was arrested at work and interrogated on and off over a 13–hour period. In the trial court, he claimed that statements he made during that time should be suppressed. The judge thought otherwise, and trial began on

January 11, 1989. There were six witnesses, including Darryl Pledger, who observed events immediately after the shooting, which occurred in a street below his apartment window. Everett claims that only three of the witnesses provided evidence against him. The testimony of Officer Rowan focused on Everett's false exculpatory statements. Everett's girlfriend, Dawn Benson, testified about conversations between Everett and Hollingsworth about plans to kill Walker. A county medical examiner testified that Walker was killed by gunshots but that he also had blunt trauma injuries that could have been caused by being run over by a vehicle, which corroborated Everett's confession that he ran over Walker with his car. In contrast with these witnesses, Everett thinks Pledger's testimony actually helped him. Pledger testified that he did not see Everett at the crime scene, and that he did not see any vehicles in the area. Everett was convicted of conspiracy. But the jury did not reach a verdict as to murder, and a mistrial was declared on that count.

On February 23, 1989, a second jury trial was held on the murder charge, which was premised on an "accountability" theory under Illinois law, and on the reinstated solicitation charge, which had been withdrawn by the prosecution on January 10, 1989, just prior to the first trial. Everett was convicted of both. He was sentenced on March 22 for conspiracy, solicitation, and murder convictions, receiving 6 years, 15 years, and 40 years, respectively, to be served concurrently, but consecutive to a previous sentence for armed violence and aggravated battery.

Everett appealed and lost. *People v. Everett*, 228 Ill.App.3d 1054, 170 Ill.Dec. 775, 593 N.E.2d 664 (1992). He also filed a post-conviction motion, which the trial court denied. He exhausted his state court remedies and, on May 10, 1995, he filed the present petition for a writ of habeas corpus.

■ In denying the petition on May 14, 1997, the district court relied on our decision in *Lindh v. Murphy*, 96 F.3d 856 (7th Cir. 1996), and applied the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) to the claims. After the district court's decision, however, we have all learned that the AEDPA does not apply to noncapital cases when the petition is filed prior to the Act's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Because the AEDPA contains provisions which alter the analysis of habeas petitions brought under 28 U.S.C. § 2254, Everett contends that we must, therefore, send this case back to the district court for a proper analysis. We disagree. The issues presented in this case and the record as it exists allows us to evaluate Everett's claim. *See Patrasso v. Nelson*, 121 F.3d 297 (7th Cir.1997); *Aliwoli v. Gilmore*, 127 F.3d 632 (7th Cir.1997). It follows that our references to 28 U.S.C. § 2254(d) are to the version of the statute in effect prior to the AEDPA.

■ Everett argues that his confession was not voluntary because of such factors as the length and circumstances of the interrogation and the alleged failure to give him warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The ultimate issues of whether a confession is voluntary and whether a waiver of *Miranda* rights is voluntary are issues of law reviewed *de novo*. *United States v. D.F.*, 115 F.3d 413 (7th Cir.1997); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Watson v. DeTella*, 122 F.3d 450 (7th Cir.1997); *Henderson v. DeTella*, 97 F.3d 942 (7th Cir.1996), *cert. denied*, ─── U.S. ───, 117 S.Ct. 1471, 137 L.Ed.2d 683. The determination of the historical facts is the proper domain of the trial court. *United States v. D.F.* As we said in *Henderson*, frequently the State and the petitioner offer conflicting testimony as to what the historical facts were. Thus, even though the ultimate issue of voluntariness is a question of law, the state court's determination regarding factual issues are presumed correct under 28 U.S.C. § 2254(d).

■ The issue in this case is a factual one—what happened during the interrogation. Everett claims to have been interrogated at least three times over a period of 13 hours. He says that he was not given his *Miranda* rights when he was arrested and that he nevertheless asked to call his attorney but was not allowed to make the call.

Further, he says that even in their testimony the police officers contradicted one another about when *Miranda* warnings were given, thus casting doubt on the entire police version of events: one testified that no warnings were given during the second period of questioning, whereas the other said that warnings were given. During the interrogation Everett claims to have been denied food and water. Not surprisingly, the police see it somewhat differently. The police claim Everett was given his *Miranda* warnings. According to the officers, Everett was allowed a telephone call but, rather than calling an attorney, he called his girl friend, informing her of the exculpatory story he had given the police and hoping that she would corroborate it. After he finally called his attorney he invoked his right to remain silent, and no further questioning took place. The officers say that the initial interview lasted 45 minutes and that at that time Everett denied any involvement in the murder. Approximately 2 hours later, the police obtained Everett's written consent to search his vehicle; after the automobile was searched, Everett gave another exculpatory statement. At about 11:45 p.m. he was questioned again, and again given *Miranda* warnings. This time he gave an inculpatory statement, after which he requested counsel and was allowed to call an attorney at 1 a.m. After this time, when an assistant state's attorney arrived to question him, Everett refused to answer questions.

An evidentiary hearing was held in the state trial court on November 10, 1988, on Everett's motion to suppress his statements. The trial judge heard testimony from Detective Michael Rowen, Detective John Duffy, and Mr. Everett; he considered stipulations and heard argument from counsel. Following the hearing he made the following findings: Everett was arrested at his job at the Social Security Administration at about 11 a.m. on March 31. He made three statements; two were exculpatory and one, made at about 11:15 or 11:30 at night, was inculpatory. Specifically, when Everett was arrested Officer Rowen notified Everett that he was being questioned about a homicide and advised him of his *Miranda* rights; further, *Miranda* warnings were repeated at about 5 p.m. when questioning resumed after a break during which Everett's car-which remained at the Social Security Administration—was searched. At about 11:15 Everett was again given *Miranda* warnings and then gave an inculpatory statement.

As to whether Everett was subjected to mental coercion, the judge noted that about 13 hours passed between the time of the arrest and the time of the final statement and that, although Everett did not receive food until after the final statement, he had been offered lock-up food—that is, a baloney sandwich—earlier in the day and he declined it. As to the issue of whether Everett was allowed to call his attorney, the judge specifically stated that he believed the testimony of the officers.

We have examined the record of the hearing and conclude that the findings are clearly entitled to the § 2254(d) presumption of correctness. Given those facts, there is no basis in law for a conclusion that either the confession itself or the waiver of *Miranda* rights was involuntary.

■ Everett's next claim is that the evidence was insufficient to sustain the conviction. The primary issue before us is whether the findings of the Illinois Appellate Court are entitled to a presumption of correctness under § 2254(d) or whether mistakes made by that court undermine its findings. Everett points to four factual errors in the opinion of that court: the court found (1) that Pledger testified at the second trial, when he did not; (2) that Everett had previously been convicted of attempted murder, when the conviction was actually for armed violence and aggravated battery; (3) that Everett answered the state's attorney's questioning when actually he had not; and (4) that there were tears in the left sleeve of the garment the "defendant" wore when there was no forensic evidence at all about the clothing Everett wore.

These errors do not reassure us regarding the attention this case received from the Illinois appellate court. The first error is egregious; the others somewhat less significant. Starting from the end of the list, we note that it is clear from the context that the

statement regarding tears in the defendant's left sleeve was simply a misstatement. The court also said that "the injuries, abrasions and torn clothing led [the medical examiner] to conclude that the victim was struck a glancing blow by an automobile bumper or fender while lying down," indicating to us that in the prior statement the court wrote *defendant* when it meant *victim*. *People v. Everett* at 667. Next, it is true the court said that the state's attorney arrived and the defendant was "given his Miranda rights, questioned, and formally charged." The fact that he was "questioned" could imply that he answered, but at another point in the decision we find a statement that Everett told the state's attorney that he was advised not to talk. If this is an error, it is minor. Third, the statement regarding the prior conviction is clearly an error, but it has little bearing on the issues before us. These mistakes are unfortunate and they should not have occurred, but they are not altogether alarming.

The appellate court's apparent belief that Darryl Pledger testified at the second trial when he did not was a doozie of a mistake. Everett argues that it was Pledger's testimony which caused the jury to hang the first time around and his absence which caused it to convict at the second trial. If it were true that Pledger was central to the case, this error could undermine the appellate court's findings. However, after a review of the record, we believe that Pledger is not as helpful to Everett as he contends. Pledger was awakened by gunshots and ran to the window, but he did not see the shooting. He then called 911, got dressed, and walked downstairs to another apartment before going out to the street. Clearly, things happened that Pledger did not see. All of which does not excuse the appellate court's faux pas. But it does put the error in perspective.

■ It is not our role to chastise the Illinois courts. The issue before us is whether the evidence at trial was sufficient to sustain the conviction. Clearly it was. For a theory of accountability, Illinois law requires courts to look at the circumstances surrounding the incident in question to determine whether there was a shared criminal intent between the principal and the accomplice or whether there was a common design or community of unlawful purpose. *People v. Foster*, 198 Ill. App.3d 986, 145 Ill.Dec. 312, 556 N.E.2d 1214 (1990). A person commits solicitation of murder when "with the intent that the offense of first degree murder be committed, he commands, encourages or requests another to commit that offense." 720 ILCS 5/8–1.1. Here, the evidence consisted of the confession Dawn Benson's testimony corroborated and the testimony of the medical examiner. There was evidence that Hollingsworth and Everett planned the murder together. Everett attempted to provide Hollingsworth with bullets for the gun. Everett drove over the victim to ensure that he was dead. Everett paid Hollingsworth for his role in the murder. Looking at all of this in the light most favorable to the State, we conclude that the evidence was more than sufficient to support Everett's conviction.

■ Finally, Everett claims that he was denied the effective assistance of counsel because his trial attorney did not call Darryl Pledger as a witness. As we now know, the State did not call Pledger in the second trial, and Pledger is the witness whom Everett credits with the hung jury in the first trial. It follows, then, that Everett claims that had his counsel called Pledger, there would not have been a conviction the second time; therefore, it was incompetence not to call him.

This claim has been procedurally defaulted. Everett raised ineffective assistance of counsel in his state postconviction proceeding and the grounds included counsel's failure to call several witnesses. However, he did not argue in the state court that Pledger should have been called; rather, he named other potential witnesses.

The specific ground for ineffectiveness raised in the federal petition must have been raised in the state case. If not, Everett must show cause for the failure to raise the issue and prejudice arising from the failure or that the failure to consider the claim will result in a fundamental miscarriage of justice. *Aliwoli v. Gilmore; Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Everett has not shown cause for the failure

to raise the issue in state court. Our previously expressed skepticism regarding the value of Pledger's testimony indicates that Everett cannot show prejudice. Nor is there a miscarriage of justice.

The decision of the district court is AFFIRMED.