THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAMONA HOOD, Defendant-Appellant.

First District (3rd Division)   No. 1—87—0423

Opinion filed November 15, 1989.

130

Randolph N. Stone, Public Defender, of Chicago (Linda J. Seeley, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and Sharon L. Heath, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

Defendant, Ramona Hood, was convicted of murder after a bench trial and was sentenced to 30 years' imprisonment. She argues on appeal that (1) her murder conviction should be reversed because the State failed to offer proof that she did not act under provocation which supported a conviction only for voluntary manslaughter; (2) one of the two convictions for murder should be vacated because she was convicted of only one killing and a new sentence must be imposed on the remaining conviction; (3) her sentence should be vacated because of the victim impact evidence at the sentencing hearing; and (4) her 30-year sentence was excessive.

Ronald Wyatt testified for the State that on December 3, 1985, he was at his father's house with his father and Wilbert Foster, the deceased. Foster was about 67 years old and was very intoxicated, and he could hardly stand up. Defendant arrived later, and Foster asked her several times to come to his apartment. Wyatt drove Foster and defendant to his building. Foster was unable to get out of the car because of his intoxication. After Wyatt helped Foster out of the car, he and defendant helped Foster into the building because he could hardly walk. Wyatt saw Foster and defendant enter the building, and Wyatt then left.

Detective John Dahlberg testified for the State that on December 31, 1985, he advised defendant of her rights and she stated that she understood them. She said that Foster asked her to come home with him, and she agreed to go there to have drinks. She had known Foster for about five years, and he paid to have sex with her. She assisted Foster into his apartment. They had drinks, and she then telephoned her boyfriend to say that she would be home soon. Foster asked her for sex, and she said that she did not have the time and he did not have any money anyway. She told Foster that she had to leave. He went to the bathroom and came out with his pants down, and he was fondling his penis. He came over to her and again asked for sex. She again refused.

As defendant was preparing to leave, Foster picked up a broom and hit her in the shoulder with it. She became angry and struggled over the broom. She knocked Foster down. She put on her coat, and

Foster grabbed her from behind by putting his hand on her shoulder. She reached into her pocket for a knife and cut Foster on the leg. She then pushed him back towards the couch, and she stabbed him once in the abdomen. He fell to the couch. Defendant then left. She said she was not in fear for her life and that Foster was drunk and would not harm her.

Charles Head testified for the State that he was the building custodian for the Chicago Housing Authority senior citizen building where Foster lived in a neat apartment. On December 3, 1985, about 1 p.m., he observed Foster having trouble getting out of a car. Foster was intoxicated, and defendant was helping him. Foster encountered Head and Edna Townes in the lobby and he swore at Townes. When Foster was drunk, he was profane, belligerent, and argumentative. He found Foster's body the next day in his bed. The apartment was ransacked and bloody.

It was stipulated that if called, Dr. Tae An would testify that he conducted a postmortem examination of Foster. Foster was 65½ inches tall and weighed 140 pounds. He had stab wounds in his chest, back, and leg, and numerous multiple lacerations, cutting wounds, bruises, and abrasions. The cause of death was multiple stab wounds and incised wounds. Foster's blood tested positive for ethanol.

Defendant's motion for a directed finding of not guilty was denied. Defendant was found guilty of murder and armed violence, but the armed violence finding was vacated because there was "only one incident." Defendant's motion for a new trial was denied.

Leroy Grant testified for the State at the sentencing hearing that the death of his uncle had an emotional impact on him. Foster's death was a shock to Foster's brothers and sisters. Foster's eldest sister's heart condition was aggravated by the news of Foster's death, and she was obtaining counseling. The court overruled an objection to the hearsay testimony.

Defendant objected to the introduction into evidence of Grant's written victim impact statement on the basis that it was hearsay, that fairness dictated that defendant be permitted some opportunity for cross-examination, and that the statement was broad and generalized. Defendant also indicated that such a statement should not be considered unless there was some showing that the act had been intended to harm the victims. The trial court permitted the witness to testify about the victim impact. The trial court stated that it was a matter of what weight to be given victim impact statements.

Grant testified that Foster's eldest sister was unable to travel because she was 80 years old and hospitalized. The other brothers and

sisters of Foster were approximately 65, 75, 61, and 71 years old and lived out of State. One relative was an invalid who was unable to travel great distances. The relatives hesitated to come to Chicago because of the violent nature of the crime and because they feared for their safety.

The State introduced into evidence a certified copy of defendant's prior 1980 conviction for robbery. Defendant had been placed on probation and had violated her probation.

Defendant's mother, Clara Mae Ferguson, testified on behalf of defendant at the sentencing hearing that defendant had improved since her imprisonment. Defendant had talked to a psychiatrist and has taken Bible classes. Prior to the imprisonment, defendant had been involved with drugs. Ferguson had been taking care of defendant's three children for over three years.

There was also evidence in mitigation that defendant wrote a letter to the judge stating that she was sorry and did not intend what she had done.

The order of sentence and commitment stated that she had been sentenced to 30 years' imprisonment for two counts of murder (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2)).

Defendant first argues that the State failed to offer proof that she did not act under provocation which supported a conviction only for manslaughter. Defendant argues that she and the deceased engaged in mutual combat, that the deceased died as a result of a violent struggle, and that mutual combat or quarrel constitutes provocation.

■ A person who kills without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed. (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(a)(1).) If a defendant presents sufficient evidence to reduce the charge from murder to voluntary manslaughter, then to prove murder the State must prove beyond a reasonable doubt that the voluntary manslaughter "defense" is meritless. *People v. Reddick* (1988), 123 Ill. 2d 184, 197, 526 N.E.2d 141.

■ ■ Mutual combat in the context of serious provocation is defined as a fight in which both parties enter willingly or in which two persons upon a sudden quarrel and in hot blood mutually fight upon equal terms. (*People v. Neal* (1983), 112 Ill. App. 3d 964, 967, 446 N.E.2d 270.) Mere words are not sufficient provocation to establish voluntary manslaughter. (*Neal*, 112 Ill. App. 3d at 967.) The conduct must be sufficient to excite an intense passion in a reasonable person. (*Neal*, 112 Ill. App. 3d at 967.) The provocation must be proportionate

to the manner in which defendant retaliated. (*Neal*, 112 Ill. App. 3d at 968.) The crime is murder when defendant attacked the deceased with violence out of proportion to the provocation. (*Neal*, 112 Ill. App. 3d at 968.) Passion will not relieve defendant from liability for murder unless it was engendered by serious provocation. *Neal*, 112 Ill. App. 3d at 969.

■ Defendant's murder conviction can be upheld on the basis that the provocation was not serious enough to incite intense passion in a reasonable person. Defendant was angered by the struggle with an elderly and extremely intoxicated man. Defendant's multiple stabbing of the victim was out of proportion to the victim's attacks on her, and the struggle was not on equal terms. The postmortem examination report stated that Mr. Foster had consumed more than enough alcohol to be considered intoxicated. His blood tested positive for ethanol at 138 milligrams. He was 67 years old, was 5 feet 5½ inches tall and weighed only 140 lbs. Where the provocation is slight and the retaliation great, it has been held to be murder. *People v. Dowdell* (1980), 84 Ill. App. 3d 707, 709, 406 N.E.2d 123.

Defendant next argues that one of her two murder convictions (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2)) should be vacated because there was only one death. Defendant also argues that because her sentence was imposed on an invalid count, she must be resentenced. The State agrees that the mittimus should be amended to reflect one conviction for murder but argues that the error was technical and had no effect on the sentence.

■ There can be only one murder conviction and one sentence for one count of murder when there was only one death. (*People v. Hosty* (1986), 146 Ill. App. 3d 876, 886, 497 N.E.2d 334.) When there are multiple convictions for offenses arising out of a single act, the sentence is imposed on the most serious offense. (*Hosty*, 146 Ill. App. 3d at 886.) Intentional killing is a more serious crime than murder based upon knowledge of a strong probability of death or great bodily harm. (*Hosty*, 146 Ill. App. 3d at 886.) Defendant's conviction under the second count involving section 9—1(a)(2) should be vacated.

■ Defendant need not be resentenced after one murder conviction is vacated if there is no indication in the record that the court was influenced by the second murder conviction in sentencing. (*People v. Smith* (1984), 124 Ill. App. 3d 805, 813, 465 N.E.2d 101.) *People v. Bone* (1982), 103 Ill. App. 3d 1066, 1070, 432 N.E.2d 329, upon which defendant relies, is distinguishable because it could not be determined how much weight the trial court had given to the multiple convictions in sentencing defendant. There is no indication in the instant case that

the court was influenced by the second murder conviction in imposing sentence. After disposing of the armed violence conviction, the court stated, "there's only one incident in this case, so only one finding remains." Later, the court stated that because there was only one incident, only the "murder" conviction would remain. This indicated that the judge intended to sentence the defendant for only the offense of murder.

Defendant next argues that admission of oral and written victim impact evidence at the sentencing hearing violated her rights to due process and a fair sentencing hearing, the prohibition against cruel and unusual punishment, and the State constitutional provision that penalties are to be determined according to the seriousness of the offense and with the objective of restoring one to useful citizenship. Defendant also argues that the State statute allowing victim impact statements does not extend to nephews of the deceased.

The State argues that the issues now raised concerning victim impact evidence were waived because defendant only objected at the hearing on the basis that the statements were inadmissible as hearsay. Defendant also made arguments below that victim impact statements should not be considered unless there was a showing that the defendant's act intended to harm the victim and that fairness dictated that defendant be allowed some opportunity for cross-examination. Defendant's argument that the nephew of the victim was improperly permitted to testify was clearly not raised below and is therefore waived. However, even if the objections below were sufficient to preserve for review the issue of the constitutionality of the admission of the victim impact evidence, defendant's argument is without merit.

The Supreme Court has held that the eighth amendment of the United States Constitution prohibits the jury's consideration of a victim impact statement in the sentencing phase of a capital murder trial. (*Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529.) However, the trial court's consideration of victim impact evidence at the sentencing hearing in a noncapital case has been upheld by an Illinois appellate court. *People v. Hines* (1988), 165 Ill. App. 3d 289, 303, 518 N.E.2d 1362.

In *People v. Scott* (1989), 180 Ill. App. 3d 418, 424, 535 N.E.2d 1113, the court held that unlike the risk in *Booth* that the jury would impose the death penalty in an arbitrary and capricious manner, there was no basis there to conclude that the trial court was unduly influenced by the evidence in sentencing defendant. (*Scott*, 180 Ill. App. 3d at 424-25.) In addition, this court held in *People v. Fountain* (1989), 179 Ill. App. 3d 986, 1000, 534 N.E.2d 1303, that *Booth* only applied to

death penalty cases, that the victim impact statement was properly considered, and that there was no evidence there that the trial court had been improperly influenced where it had set forth the factors it had considered.

Similarly, in the instant case there is no evidence that the trial court was unduly influenced by the victim impact statement. Defendant was not denied a fair sentencing hearing. In sentencing defendant, the court listed the factors it considered in imposing sentence. The court never stated it considered the victim impact evidence.

Defendant finally argues that the 30-year sentence was excessive because of her limited criminal history and rehabilitative potential. Defendant also points to her remorse, her family support, her three children, her involvement in religion, her writing ability, and the provocation of the victim.

Defendant was eligible for a sentence of 20 to 40 years' imprisonment. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1).) A midrange sentence for the offense of murdering an intoxicated man whom defendant did not fear and whom she could have rebuffed without a knife is not an abuse of discretion.

The judgment of the circuit court is affirmed.

Affirmed and remanded.

FREEMAN, P.J., and WHITE, J., concur.