51 F.3d 276
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Robert NELSON, Petitioner/Appellant,
v.
Odie WASHINGTON, Respondent/Appellee.
 No. 94-1792.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 6, 1995.*
Decided April 6, 1995.
 
 Before BAUER, COFFEY and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Robert Nelson appeals the district court's denial of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. Sec. 2254. For the reasons stated in the attached district court Memorandum Opinion and Order dated March 4, 1994, we AFFIRM.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE NORTHERN DISTRICT OF ILLINOIS
 EASTERN DIVISION
 
 2
 United States of America ex rel. Robert Nelson, Petitioner,
 
 
 3
 v.
 
 
 4
 Odie Washington, Warden, Respondent.
 
 93 C 4321
 MEMORANDUM OPINION AND ORDER
 
 5
 MAROVICH, District Judge.
 
 
 6
 Robert Nelson ("Nelson") has filed a petition for writ of habeas corpus under 28 U.S.C. Sec. 2254 against Dixon Correctional Center Warden Odie Washington ("Respondent"). Nelson challenges his 1978 murder sentence of 40 years which he is now serving. In post-conviction proceedings, Nelson requested that the trial court vacate five of his six judgements of murder convictions, since there was only one victim. The trial court dismissed Nelson's petition on the State's motion to dismiss on grounds of waiver. On appeal, the Illinois Appellate Court reversed the dismissal and remanded the cause. The State sought leave to appeal to the Illinois Supreme Court, which was denied. On remand, the trial court vacated five of the six judgments of conviction, but did not resentence Nelson. Before this Court Nelson asserts that the failure to resentence him after vacating five of the six judgments of conviction violates his due process rights. For the reasons set forth below, the Court dismisses Nelson's petition for a writ of habeas corpus.
 
 Statement of Facts
 
 7
 The parties do not dispute the facts and in Sec. 2254 proceedings state court factual findings are presumed correct. Sumner v. Mata, 449 U.S. 539 (1981); Bryan v. Warden, Indiana State Reformatory, 820 F.2d 217, 218-19 (7th Cir.), cert. denied, 484 U.S. 867 (1987). In keeping with the presumption of correctness and this lack of dispute, we will recount here the facts set forth by the Illinois Appellate Court in People v. Nelson, No. 2-90-0294, slip op. 1-8 (Ill.App.Ct. June 25, 1991):
 
 
 8
 The defendant, Robert Nelson was charged by indictment with six counts of murder in the July 15, 1978, death of his mother, Dorothy Nelson, who was pushed out of a 12th floor window of the Sheraton Hotel, in Oak Brook, Illinois. Counts I, II and III, respectively, charged the defendant pushed the victim out the window intending to kill her, knowing that such act would cause death, and knowing that such act created a strong probability of death or great bodily harm. (Ill.Rev.Stat.1977, Ch. 38, pars. 9-1(a)(1) and (a)(2).) Counts IV, V, and VI, respectively, charged the defendant struck his mother with a blunt object and pushed her out the window intending to kill her, knowing that such act would cause death, and knowing that such act created a strong possibility of death or great bodily harm. (Ill.Rev.Stat.1977, ch. 38, pars 9-1(a)(1) and (a)(2). A jury returned guilty verdicts on each of the six murder counts, and the court entered judgments thereon.
 
 
 9
 After a hearing on November 13, 1979, the court ordered a single sentence of 40 years without specifying the count to which the sentence pertained. The mittimus specified the statutory sections for murder "as charged in the indictment" were sections 9-1(a)(1) and 9-1(a)(2) of chapter 38 (Ill.Rev.Stat.1977, ch. 38, pars. 9-1(a)(2)). An amended mittimus was filed six days later on November 19 which sentenced Nelson only for his conviction on count I of murder "as charged in the indictment" under section 9-1(a)(1) of chapter 38 (Ill.Rev.Stat.1977, ch. 38, par. 9-1(a)(1). Nelson's conviction was affirmed by the appellate court in an unpublished Rule 23 Order (134 Ill.2d R. 23). People v. Nelson (1981), 101 Ill.App.3d 1198.
 
 
 10
 Beginning in December 1982, Nelson filed a series of post-conviction petitions with numerous amendments under the Post-Conviction Hearing Act. (See presently Ill.Rev.Stat.1989, ch. 38, par. 122-1 et seq.) The pro se petition from which the ... appeal proceeded originally was filed on February 27, 1987. Therein, the defendant requested the court to vacate five of the six judgments of conviction and to order a new sentencing hearing. The State's motion to dismiss on grounds of waiver was granted, and the defendant appealed. The [appellate court] reversed and remanded, holding that the trial court erred in dismissing the petition more than 30 days after the defendant had filed it. (Ill.Rev.Stat.1987, ch. 38, par. 122-2.1(a); People v. Porter, 122 Ill.2d 64, 85-86 (1988); (People v. Nelson, 182 Ill.App.3d 1071 (1989)). The State's petition for leave to appeal to the supreme court was denied. People v. Nelson (1989), 127 Ill.2d 633.
 
 
 11
 At this point, we will return to our own review of the procedural history of this case. In an additional post-conviction hearing, the trial court vacated five of the six judgments entered on the jury's verdicts, but did not agree to resentence Nelson. Nelson then appealed to the appellate court, raising the issue of whether due process requires that he be resentenced in light of the vacatur of five of six judgments of conviction of murder. The appellate court affirmed the trial court's decision holding that the trial judge was not influenced by the vacated counts when he sentenced Nelson for the murder of his mother. The Illinois Supreme Court denied Nelson's petition for review. Nelson filed a habeas corpus petition requesting that this Court find that the failure to resentence him violates his constitutional right to due process. Nelson seeks an order from this Court directing the State to resentence him within ninety days or release him.
 
 Procedural Defenses to Section 2254 Claims
 
 12
 Before a district court can consider the merits of a Sec. 2254 petition, the petitioner must have fulfilled two requirements. Nelson must have exhausted all state remedies and avoided procedural default by raising all federal constitutional claims during the course of the state proceedings. Verdin v. O'Leary, 972 F.2d 1467, 1472 (7th Cir.1992); Henderson v. Thieret, 859 F.2d 492, 496 (7th Cir.1988), cert. denied, 490 U.S. 270, 275 (1991). If a claim is not exhausted or has been procedurally defaulted, a Sec. 2254 petition must be dismissed. Id.
 
 
 13
 Claims become exhausted when they have been presented to the highest available state court for a ruling on the merits, or when state remedies are no longer available. Engle v. Isaac, 456 U.S. 107, 125-26 n. 28 (1982); Resnover v. Pearson, 965 F.2d 1453, 1458 (7th Cir.1992). The State concedes here that Nelson has exhausted his state remedies in the sense that he no longer has any further appeals on the issues raised here. We add, however, that the Supreme Court has interpreted exhaustion to require that a petitioner "fairly present" the federal issue to the state courts as a prerequisite to exhaustion. Pickard v. O'Connor, 404 U.S. 270, 275 (1971).
 
 
 14
 Procedural default can occur in the following ways and depends on state law. First, default occurs when federal claims could have been but were not raised in state court and cannot now be presented to the state court. Resnover, 965 F.2d at 1458. In the absence of a showing of cause and prejudice for the default, a federal court cannot address federal claims that could have been presented but were not presented to the state court. Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Resnover, 965 F.2d at 1458. Not pursuing all the appeals required under state law in a timely fashion is another way a procedural default can occur. Coleman v. Thompson, 111 S.Ct. 2546, 1557 n. 1 (1991); Jenkins v. Gramley, 8 F.3d 505, 507 (7th Cir.1993). Finally, the fair presentment of federal issues discussed under exhaustion is also a useful approach for determining if procedural default has occurred. See United States ex rel. Sullivan v. Fairman, 731 F.2d 450, 453 n. 4 (7th Cir.1984). ("[T]he analysis dealing with whether a state court has been fairly apprised of potential constitutional ramifications of claimed trial court error is equally applicable to waiver cases.").
 
 
 15
 In this case, the Respondent does not challenge Nelson's exhaustion of his state remedies. However, Respondent argues Nelson did not afford the state courts the opportunity to address his due process claim by fairly presenting it in constitutional terms. As noted above, fair presentment provides a useful guide for analyzing procedural default and we will use that approach here.
 
 
 16
 Courts have developed a framework for determining if petitioners have given state courts a fair opportunity to consider claims in constitutional terms. The Seventh Circuit has adopted the approach fashioned by the Second Circuit in Daye v. Attorney General of New York, 696 F.2d 186, 194 (2d Cir.1982) (en banc):
 
 
 17
 If the petitioner's argument to the state court did not: (1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar fact situation; (3) assert the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts that is well within mainstream of constitutional litigation, then this court will not consider the state courts to have had a fair opportunity to consider the claim. However, the presence of any one of these factors, especially (1) or (2), does not automatically avoid a waiver; the court must consider the specific facts of each case.
 
 
 18
 Verdin v. O'Leary, 972 F.2d 1467, 1473 (7th Cir.1992) (quoting Daye and collecting cases). We will apply this approach here.
 
 
 19
 Nelson argued to the Illinois appellate court that his due process rights were violated when the trial court vacated five of the murder convictions but did not resentence him. Despite the general reference to "due process," Nelson has not met any of the factors provided in the Daye framework. In his brief to the appellate court, Nelson did not cite any federal cases when arguing for resentencing. Nelson cited only Illinois state court cases and those cases in turn did not cite to any federal cases when analyzing the issue. Further, the state cases Nelson cited do not mention the due process clause of the Fourteenth Amendment. In fact, none of the cases mention due process though a concern for fairness runs throughout the reasoning of the state court cases.
 
 
 20
 As further evidence that Nelson failed to present the issue in constitutional terms, we also look to the second part of his argument to the appellate court. In this portion of his brief, Nelson used the heading "ROBERT NELSON'S CONSTITUTIONAL RIGHTS TO DUE PROCESS WERE VIOLATED AS A RESULT OF THE DIRECTIVE BURDEN OF PROOF INSTRUCTIONS." Nelson then cited pertinent federal cases in his second argument. However, in his resentencing argument, the first argument, the heading only mentions due process and does not specifically mention the Fourteenth Amendment right or the Constitution. In his brief to this Court Nelson relies heavily on federal cases that were available at the time of his appeal to the appellate court though not mentioned in his appellate brief. See, e.g., James v. United States, 476 F.2d 936 (8th Cir.1973); McGee v. United States, 462 F.2d 243, 246 (2d Cir.1972); United States ex rel. Mota v. Fairman, 624 F.Supp. 789 (N.D.Ill.1985). Nonetheless, both the appellate court, in its order, and the State, in its brief, cited only state cases and did not frame the issue in terms of the Due Process Clause of the Fourteenth Amendment.
 
 
 21
 As for the second Daye factor, Nelson did not rely on any state cases that apply constitutional analysis to a similar fact situation. Although the state cases that Nelson cites do involve similar fact situations, none of the cases present the issue in terms of due process. The cases merely vacate multiple counts of a judgment and then remand the case for resentencing without ever mentioning due process or any other constitutional terms. A close review of these cases indicates that the "one offense-one conviction" rule[1] and the potential need for resentencing developed in Illinois without reference to Fourteenth Amemdment Due Process concerns. See, e.g., People v. King, 363 N.E.2d 838 (Ill.), cert. denied, 434 U.S. 894 (1977); People v. Lilly, 309 N.E.2d 1 (Ill.1974); People v. Hood, 547 N.E.2d 637 (Ill.App.Ct.1989); People v. Wright, 514 N.E.2d 817 (Ill.App.Ct.1987); People v. Lopez, 497 N.E.2d 859 (Ill.App.Ct.1986); People v. Smith, 465 N.E.2d 101 (Ill.App.Ct.1984); People v. Bone, 432 N.E.2d 329 (Ill.App.Ct.1982).
 
 
 22
 Nelson has also not asserted his claim in terms so particular as to bring a federal constitutional right to mind. Nelson has used the words "due process," but these words alone can also bring to mind the Illinois due process clause. Furthermore, Nelson has not alleged a fact pattern that is well within the mainstream of constitutional litigation. This factor arises when the petitioner uses a particular idiom, or formulation of, a federal claim which the local legal culture has adopted consistently with the federal courts interpretation. Verdin, 972 F.2d at 1475 (quoting Nadworny v. Fair, 872 F.2d 1093, 1098 (1st Cir.1989)). That, of course, is a rare bird. Id.
 
 
 23
 The fact pattern in this case, involving multiple judgments of a conviction being vacated and the allegation that due process requires resentencing, is not well within the mainstream of constitutional litigation in the manner explained in Verdin. Nelson has not used a well-known idiom or formulation of a federal claim, like "to be present at critical stages of his trial" or the right "to a fair trial." Verdin, 972 F.2d at 1480. Under certain circumstances, these terms have been held sufficient to alert a state court to the Sixth and Fourteenth Amendments rights to be present at one's trial. Id. Nelson merely used the word due process. He did not use an idiom which would alert the state to a Fourteenth Amendment right, as the Illinois Constitution also contains a due process right.
 
 
 24
 Further, additional problems arise when a petitioner advocates a claim that is similar in state and federal law, like due process. When a due process claim is advocated there exists the danger that a claim in state court "may well present the echo of a federal claim," Nadworny, 872 F.2d at 1098 (1st Cir.1989). However, this might not be enough to inform the state court of the federal nature of the claim. Verdin, 972 F.2d at 1475. As noted in Verdin, when "[v]ague or cursory references to 'due process' " are made, courts have hesitated to conclude that the issue was fairly presented in constitutional terms. 972 F.2d at 1475.
 
 
 25
 As the Supreme Court has explained, "it is not enough ... that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982). Courts have held "substantive deviations between superficially similar federal and state claims often exist. State courts are increasingly conscious that state law and the Constitution, though identical or similarly worded, may be differently construed." Nadworny, 872 F.2d at 1100. Here it is far from clear that the case law in Illinois bases its resentencing opinions on Illinois's due process clause, let alone on the Due Process Clause of the Fourteenth Amendment.
 
 
 26
 Even assuming that the Illinois due process clause allows for Nelson's claim, we cannot assume that Illinois courts construe the state clause in the same manner as the Due Process Clause of the Fourteenth Amendment. Although the Illinois and federal due process clauses are similarly worded, the Illinois courts may and do construe their clause differently than federal courts construe the Constitution. Thus, any similarity between the federal and state claims that might exist is not enough to satisfy the fair presentment requirement in this case.
 
 
 27
 In the end, the task of this Court is to assess whether as a practical matter the state court "was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve the issue on a federal basis." Verdin, 972 F.2d at 1476. Based on our review of the Daye factors, the Court concludes that the state courts were not alerted to the federal constitutional nature of the issue and did not have an opportunity to analyze it on a federal basis. Thus, Nelson has procedurally defaulted his due process claim and we cannot reach the merits of his claim.
 
 CONCLUSION
 
 28
 For the foregoing reasons, the Court dismisses the habeas corpus petition of Petitioner Nelson under 28 U.S.C. Sec. 2254.
 
 DATED: March 4, 1994
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 In cases involving a single homicide, the rule operates in rather logical fashion to preclude multiple murder convictions for the single homicide