THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAJUAN BANKS, Defendant-Appellant.

First District (3rd Division)   No. 1—92—2617

Opinion filed March 30, 1994.

Rita A. Fry, Public Defender, of Chicago (Elyse Krug Miller, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Jon J. Walters, and James J. Ryan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a bench trial, defendant DaJuan Banks appeals his convictions on eight counts, *i.e.*, three counts of aggravated battery with a firearm, three counts of aggravated discharge of a firearm, one count of armed violence and one count of aggravated battery. Defendant was sentenced to concurrent prison terms of 20 years for aggravated battery with a firearm and armed violence, 15 years for aggravated discharge of a firearm and 5 years for aggravated battery.

On appeal four issues are raised: (1) whether defendant was proved guilty beyond a reasonable doubt, on the basis of accountability, of the offenses relating to James New, a gunshot victim who was not wounded by defendant's gun; (2) whether the three convictions for aggravated discharge of a firearm were based on the same physical act which formed the basis for the three convictions for

aggravated battery with a firearm and thus should be vacated; (3) whether the 20-year sentence constitutes an abuse of discretion; and (4) whether remandment for resentencing is necessary if any convictions are vacated.

For the reasons which follow, we vacate the convictions for one count of armed violence and one count of aggravated battery and the five-year sentence imposed for the aggravated battery conviction. We affirm all the other convictions and the sentences imposed for those crimes.

A 15-count indictment against defendant and codefendant Aundrake Parks issued from the shooting and wounding of three victims (Kenneth Lemons, David Ross and James New). Codefendant Parks was dismissed when the trial court granted his motion for directed finding after the State presented its evidence at trial. Thus, Parks is not a party to this appeal.

The State presented five witnesses at trial: Kenneth Lemons (a victim), James Sawyer (an eyewitness), James Harris, known as James New (a victim), and police officers Ronald Keith (arresting officer of defendant) and Darnell Calhoun (arresting officer of codefendant Parks).

At trial, 15-year-old Lemons testified that in the early morning hours of April 28, 1991, he attended a party in a building which was a part of the Robert Taylor Homes, where he lived. Lemons was a member of the Black Disciples street gang and was accompanied at the party by some of his friends including David Ross, James Sawyer, Derrick Taylor and Bruce White. Some members of the Gangster Disciples were also at the same party.

About 2 a.m. Lemons left the party and went riding in a car with three men. While driving around, Lemons saw a member of the Gangster Disciples driving a blue and gray van. Lemons testified that, for no reason, he shattered the driver's side window of the van with a baseball bat. Lemons and the others in the car then returned to the Robert Taylor Homes.

About 3 a.m. Lemons and approximately 11 other people including Sawyer were standing outside one of the buildings in an area with benches and they were all unarmed. Lemons heard about 20 gunshots and saw defendant shooting while defendant was "stooped down" behind a fire hydrant. Lemons knew defendant by his street name Mann and had seen him nearly every day for the past three years. Although Lemons did not see a gun, he saw fire emanating from defendant's chest. Lemons heard two different types of gunshots but could not identify the source of any shots except those emanating from the fire hydrant and never saw anyone shooting other than defendant.

Lemons walked into the building and discovered he had been shot in his right hand. Lemons knew that David Ross received a gunshot wound in his left hand and James New received a gunshot wound in his left shoulder. During the shooting, Lemons saw James New standing by the fire hydrant but did not know where Ross was located. On cross-examination, however, Lemons testified that New was standing next to him during the shooting.

Lemons testified that he joined the Black Disciples at age seven and thus had been a member about eight years. James New had been in the same gang with Lemons about five years but defendant was a member of a different gang, called the Gangster Disciples. When defense counsel objected to the State's questions concerning defendant's gang affiliation, the trial court reserved ruling on the State's assertion that it expected to tie up the information with testimony by a police officer. At the end of Lemons' testimony, however, the court granted defendant's motion to strike the testimony relating to defendant's gang membership.

James Sawyer testified that he was a member of the Black Disciples and essentially recounted the same events as Lemons. After attending the same party as Lemons, Sawyer was among those standing by the outside bench when the shooting occurred. Sawyer also observed defendant at the fire hydrant shooting at the people near the benches. Sawyer also heard shots emanating from other locations but could not identify their source. No one in Sawyer's group had a gun.

James New testified that he was with Lemons and Ross when the shooting occurred, heard no less than 15 gunshots, and sustained a wound in the back of his shoulder. New was unarmed and unable to identify the shooter.

The parties stipulated that a 9 millimeter bullet was removed from the back of New's neck. At a different hospital, Ross was treated for a single through-and-through gunshot wound on his left hand.

Police officer Ronald Keith testified that he was patrolling in a marked police car near the vicinity where the shootings occurred. About 3 a.m. he received a flash message with a description of a wanted man. Keith saw defendant running with gun in hand and observed that defendant matched the description conveyed in the flash message. Keith arrested defendant and recovered a Torris .357 handgun which had been discarded by defendant during the chase. The .357-caliber gun contained six spent casings. Ammunition for a .357 gun differs from that used in a 9 millimeter automatic weapon.

Police officer Darnell Calhoun testified that at 3 a.m. he was in a parking lot near the location of the shootings when he heard gunshots

and observed a number of people running into a building. Calhoun entered his squad car and chased codefendant Parks, who was leaving the scene of the shooting and running with his left hand in his pocket, apparently holding some object. Calhoun followed Parks about one block and then saw him talking to the occupants of a blue van. When Calhoun approached in his squad car, the blue van sped away and Calhoun arrested Parks, who was then unarmed.

After the State rested, the trial court denied defendant's motion for directed finding but granted the same motion for codefendant Parks. The defense rested without presenting any evidence.

Following closing arguments, the trial court acquitted defendant of three counts of attempted murder and other offenses.

The trial court convicted defendant of three counts of aggravated battery with a firearm (counts IV, V and VI); three counts of aggravated discharge of a firearm (counts X, XI and XII); one count of armed violence as to James New (count VIII); and one count of aggravated battery as to James New (count XIV).

The trial court imposed the following concurrent sentences: 20 years for the three counts of aggravated battery with a firearm (counts IV, V and VI) and the one count of armed violence as to New (count VIII); 15 years for the three counts of aggravated discharge of a firearm (counts X, XI and XII); and 5 years for the one count of aggravated battery as to New (count XIV).

We first consider the propriety of the convictions based on accountability relating to New for aggravated battery with a firearm, armed violence and aggravated battery.

As to the conviction for aggravated battery with a firearm, defendant asserts that the evidence failed to establish his guilt by accountability of the shooting of New because the bullet removed from New's shoulder came from a different gun than the weapon found in defendant's possession and the State did not prove that defendant acted in association with anyone. Defendant submits that New could have been a victim of isolated sniper fire, totally unrelated to circumstances of the crimes at issue in the case at bar.

The State contends that it proved all elements comprising defendant's guilt under accountability because of defendant's active and knowing participation in the shootings and his flight from the scene without reporting the crime to the police.

The relevant inquiry on review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.)

Unless the evidence is so improbable, unsatisfactory or unreasonable that a reasonable doubt of the defendant's guilt exists, a trier of fact's conclusion that a defendant is legally accountable for a criminal act will not be overturned on review. (*People v. Everett* (1992), 228 Ill. App. 3d 1054, 1059, 593 N.E.2d 664.) Moreover, the trier of fact, not the reviewing court, is responsible for determining the credibility of witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from the evidence. *People v. Steidl* (1991), 142 Ill. 2d 204, 226, 568 N.E.2d 837.

Section 5—2 of the Criminal Code of 1961 governs guilt by accountability and provides that a person is legally accountable for the crime of another if:

"Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1991, ch. 38, par. 5—2(c) (now 720 ILCS 5/5—2(c) (West 1992)).

This court has found that to convict "on the accountability theory, the State must establish beyond a reasonable doubt that: (1) the defendant solicited, ordered, abetted, agreed, or attempted to aid another in the planning or commission of the crime; (2) the defendant's participation took place before or during the commission of the crime; and (3) the defendant had the concurrent, specific intent to promote or facilitate the commission of the crime." *People v. MacFarland* (1992), 228 Ill. App. 3d 107, 122, 592 N.E.2d 471.

Regarding the first element, a defendant may be found to have aided or abetted the commission of a crime based on his presence at the scene of the crime coupled with his acts after the commission of the crime for a conviction on the basis of accountability. (*People v. Bell* (1991), 209 Ill. App. 3d 438, 445-46, 568 N.E.2d 238; *People v. McBounds* (1989), 182 Ill. App. 3d 1002, 1016, 536 N.E.2d 1225.) The trier of fact can consider the defendant's presence at the scene without disapproving or opposing it, his close affiliation with his companions after the commission of the crime, his failure to report the crime, or his flight from the scene of the crime. *People v. Reid* (1990), 136 Ill. 2d 27, 62, 554 N.E.2d 174.

The second element can be satisfied when the defendant either actively or passively participates in the commission of the offense. *Reid*, 136 Ill. 2d at 61 (active participation is not required to impose criminal guilt upon the theory of accountability).

As to the intent element for the purpose of accountability, the circumstances surrounding the crime determine whether there was a shared criminal intent or a common design of unlawful purpose.

(*Everett*, 228 Ill. App. 3d at 1059.) Words of agreement are not necessary to establish a common purpose to commit a crime. (*People v. Walker* (1992), 230 Ill. App. 3d 377, 388, 594 N.E.2d 1252.) Spontaneous and joint participation of a group in the commission of a crime can establish community of purpose or common design. (*People v. Washington* (1984), 127 Ill. App. 3d 365, 374, 468 N.E.2d 1285.) A defendant's accountability may be inferred from evidence of conduct showing a design on the defendant's part to aid in the offense. *People v. Melgoza* (1992), 231 Ill. App. 3d 510, 537, 595 N.E.2d 1261.

■ In light of these principles, we find that the evidence was sufficient to support defendant's conviction based on accountability for the shooting of New since defendant was present at the scene of the crime, actively participated in the shooting, made no attempt to stop the shootings, fled from the scene of the crime and did not report the crime to the police.

Defendant further asserts, and the State correctly agrees, that the two convictions for armed violence and aggravated battery relating to James New should be vacated and the five-year sentence imposed on the aggravated battery count should be vacated. Accordingly, we vacate these two convictions and the related five-year sentence.

The second issue is whether the three convictions for aggravated discharge of a firearm should either (1) stand as separate acts or (2) be vacated as offenses carved from the same physical act which predicated the convictions for aggravated battery with a firearm.

Defendant asserts that only the three convictions for aggravated battery with a firearm should stand because only one physical act was proved to have been committed against each victim, *i.e.*, firing at him and hitting him in the body.

The State contends that six convictions should stand because the three convictions for aggravated battery of a firearm and the three convictions for aggravated discharge of a firearm were carved out of distinct physical acts. The State submits that each of the three shots that struck the victims formed the basis for defendant's convictions and sentence for aggravated battery with a firearm and the multiple shots that missed the victims formed the basis for defendant's convictions and sentence for aggravated discharge of a firearm.

Initially the State contends that defendant has waived this issue on appeal because he did not object when the trial court found him guilty of these offenses, did not object when sentences were imposed and did not include this issue in his post-trial motion. We will review this issue as plain error because it resulted in a 15-year sentence of imprisonment, notwithstanding that the sentence is to be served

concurrently with the other convictions. *People v. Ayala* (1990), 208 Ill. App. 3d 586, 599, 567 N.E.2d 450.

The one-act-one-crime rule allows multiple convictions when a defendant commits more than one criminal act in an episode or transaction unless the charges involve precisely the same physical act. *People v. Johnson* (1989), 128 Ill. 2d 253, 538 N.E.2d 1118 (two gunshots constitute two separate physical acts sufficient to support convictions for both armed violence and attempted murder); *People v. Segara* (1988), 126 Ill. 2d 70, 533 N.E.2d 802 (affirmed two convictions for rape); *People v. Payne* (1983), 98 Ill. 2d 45, 456 N.E.2d 44 (vacated the conviction and sentence for burglary because it was the underlying felony for the armed violence conviction and both offenses were based on a single physical act); *People v. Simmons* (1982), 93 Ill. 2d 94, 442 N.E.2d 891 (cannot convict on both involuntary manslaughter and armed violence predicated on involuntary manslaughter where both offenses arose from the same act); *People v. Mormon* (1982), 92 Ill. 2d 268, 442 N.E.2d 250 (a conviction for armed violence based on rape cannot stand with a conviction for rape because the offense of armed violence is less serious than the offense of rape); *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838 (upheld convictions for rape and burglary with intent to commit rape because each offense was based on separate acts requiring proof of a different element); *People v. Tayborn* (1993), 254 Ill. App. 3d 381, 627 N.E.2d 8 (affirmed convictions for attempted murder and aggravated discharge of a firearm where the defendant fired multiple shots into an occupied building and one of the occupants sustained a gunshot wound); *People v. Burrell* (1992), 228 Ill. App. 3d 133, 592 N.E.2d 453 (two separate bullet wounds sustained by one victim constitute two separate acts sufficient to support two convictions for attempted murder and aggravated battery where the gunshots came from the defendant's gun); *People v. Guzman* (1990), 208 Ill. App. 3d 525, 535-36, 567 N.E.2d 500 (vacated three counts of aggravated battery and held that the rapid firing of six consecutive shots at one victim who sustained six separate gunshot wounds constituted a single physical act).

"As long as there are multiple acts, their interrelationship does not preclude multiple convictions and the imposition of concurrent sentences for separate offenses none of which are by definition lesser included offenses." (*People v. Dixon* (1982), 91 Ill. 2d 346, 355, 438 N.E.2d 180.) In *Dixon*, the Illinois Supreme Court upheld convictions and concurrent sentences for both aggravated battery and mob action where the codefendants struck the victim with clubs several times. The supreme court found that "the separate blows, even though closely related, were not one physical act." *Dixon*, 91 Ill. 2d at 356.

There is no dispute that the two offenses at issue are distinct and the statutory scheme for the offenses does not establish a lesser included offense. Aggravated battery with a firearm, a Class X felony, is committed when a person "knowingly *** *causes any injury* to another person by means of the discharging of a firearm." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 38, par. 12—4.2(a)(1) (now 720 ILCS 5/12—4.2(a)(1) (West 1992)).) In contrast, aggravated discharge of a firearm is a Class 1 felony and is committed when a person knowingly "[d]ischarges a firearm *in the direction* of another person." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 38, par. 24—1.2(a)(2) (now 720 ILCS 5/24—1.2(a)(2) (West 1992)).

Defendant received three convictions, as specifically charged in the indictments, for the offense of aggravated battery with a firearm for shooting and causing injury to David Ross (count IV), James New (count V) and Kenneth Lemons (count VI). In addition, defendant received another three convictions, as specifically charged in the indictments, for the offense of aggravated discharge of a firearm for knowingly discharging a firearm in the direction of David Ross (count X), James New (count XI) and Kenneth Lemons (count XII). The convictions as to New (counts V and XI) were based on the accountability theory while the remaining convictions were all based upon defendant's own actions.

■ Defendant's acts which caused injuries to the victims constitute deeds distinct from his acts of firing in the direction of a crowd of unarmed people assembled outside an apartment building. To find otherwise would result in the absurd conclusion that the convictions obtainable, given the facts of this case, rest only with the marksmanship skills of defendant. The evidence reveals that numerous shots, no less than 15, were fired into a crowd of approximately a dozen unarmed people. Defendant's gun contained six spent bullet casings. The witnesses identified defendant as a shooter. Defendant would have us count only the shots that hit the victims and disregard the stray shots, hardly just target practice.

When viewing the evidence in the light most favorable to the prosecution, as we must, we believe that a rational trier of fact could find the elements of the crime of aggravated discharge of firearm beyond a reasonable doubt. Moreover, the trier of fact bears the responsibility for determining the reasonable inferences to be drawn from the evidence. Accordingly, we affirm the three convictions for aggravated discharge of a firearm.

Third, defendant asserts the 20-year sentence was an "outrage" because such sentence is equivalent to the minimum sentence for murder and defendant was acquitted of the counts for attempted

murder and causing great bodily harm to two of the victims (Lemons and Ross). Defendant also asserts that the 20-year sentence should be vacated because the court considered, in aggravation, two improper factors: (1) his alleged gang membership and (2) the fact that he fired at the victims when such acts are inherent in some of the offenses for which he was convicted.

Initially the State maintains that defendant waived the sentencing issues on appeal by failing to object at the sentencing hearing and failing to raise the issue in a motion for reconsideration of sentence.

Courts have been in conflict about the waiver doctrine as it applies to sentencing issues. The matter is currently pending before the Illinois Supreme Court in *People v. Lewis* (1992), 235 Ill. App. 3d 1003, 602 N.E.2d 492, *appeal granted* (1993), 148 Ill. 2d 649, 610 N.E.2d 1271.

This court, however, has held that a defendant is not required to file a post-sentencing motion seeking a new sentencing hearing in order to preserve errors which occurred at the sentencing hearing. (People v. Gales (1993), 248 Ill. App. 3d 204, 236, 618 N.E.2d 847; *Burrell*, 228 Ill. App. 3d at 147.) Accordingly, we find that defendant did not waive this issue for appeal.

A reviewing court will not disturb a sentence which falls within the statutory limits unless it is manifestly disproportionate to the nature of the offense. *People v. Costello* (1992), 224 Ill. App. 3d 500, 510, 586 N.E.2d 742.

The 20-year sentence now challenged by defendant was imposed for the three convictions for aggravated battery with a firearm. Aggravated battery with a firearm is a Class X felony (Ill. Rev. Stat. 1991, ch. 38, par. 12—4.2(b)), which carries a sentence of not less than 6 and not more than 30 years' imprisonment (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1 (now 730 ILCS 5/5—8—1 (West 1992))).
Thus, an approximate mid-range sentence was imposed.

The sentencing court referred to gang membership as follows:

"I believe the factors in aggravation far outweighed the factors in mitigation, even taking into consideration the fact that there were rival gangs involved here, that one of the witnesses for the State has a history of carrying weapons, and I did comment on the State's witnesses in my original finding, and their backgrounds and credibility were taken into consideration at the time that I weighed the evidence and entered my finding in this case and it is set forth in the record of that earlier finding. Because a person has a history of carrying guns does not give another person a right to at least under these circumstances to fire shots in their direction."

The State's witnesses (Lemons, New and Sawyer) admitted their membership in the Black Disciples gang. At the time of defendant's trial, Lemons resided at the Audy Home due to a murder charge pending against him and Sawyer resided in the penitentiary after pleading guilty to unlawful use of a weapon. Sawyer also had a prior conviction for another gun case. After testimony indicating that defendant belonged to a rival gang, the trial court granted defendant's motion to strike the testimony about defendant's membership in the Gangster Disciples gang.

The presentence investigation report, however, expressly states that "[d]efendant revealed that he is a member of the Gangster Disciples gang and has been for 7 years."

■ Given this information, the sentencing court did not improperly consider defendant's gang membership. In fact, the tone of the court's comments does not suggest that the rival gang situation was used in aggravation at all but instead indicates a criticism of the State's witnesses and a proposed rationale for the actions of defendant. A sentencing court is not bound by the usual rules of evidence and may appropriately consider the general moral character of the offender, his mentality, his habits, his social environments, his abnormal tendencies, his age, his natural inclination or aversion to commit crime and the stimuli which motivated his conduct. *People v. Hartzol* (1991), 222 Ill. App. 3d 631, 646, 584 N.E.2d 291.

Defendant also claims that the sentencing court improperly considered elements inherent in the firearm offenses as aggravating factors based on the court's following statement:

> "I believe the fact that [defendant was] firing at other human beings, and the other individuals who apparently at the time were unarmed can be a factor to be considered in aggravation."

A sentencing court generally cannot consider an element of an offense as an aggravating factor. (*People v. Gonzalez* (1992), 151 Ill. 2d 79, 83-84, 600 N.E.2d 1189.) However, the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant, are proper factors to consider in imposing a sentence. *People v. Miller* (1992), 225 Ill. App. 3d 92, 104, 589 N.E.2d 617.

The import of the challenged statement reveals the sentencing court's consideration of the unarmed victims, *i.e.*, the armed defendant was shooting at unarmed persons. The status of the victims as armed or unarmed is not an element of the charged offenses.

We find that the trial court did not abuse its discretion in imposing a 20-year sentence for the offenses of aggravated battery with a firearm.

Finally, defendant asserts that this court should remand the matter for a new sentencing hearing if we vacate any of defendant's convictions because the sentencing court referred to the offense of aggravated discharge of a firearm, imposed a 20-year sentence on the Class X felonies and after advising defendant of his appeal rights, imposed concurrent sentences on the Class 1 felonies.

As previously noted, we vacate defendant's two convictions for armed violence and aggravated battery and the five-year sentence imposed for the aggravated battery conviction. Remand for resentencing, however, is not required where the record indicates that the sentencing judge did not substantially consider the vacated convictions in sentencing the defendant on the other convictions. *People v. Bailey* (1993), 249 Ill. App. 3d 79, 84, 616 N.E.2d 678; *People v. Hood* (1989), 191 Ill. App. 3d 129, 134, 547 N.E.2d 637.

Defendant's reliance on *People v. Figures* (1991), 216 Ill. App. 3d 398, 576 N.E.2d 1089, is unpersuasive since the court in *Figures* specifically found that it could not determine from the record with any degree of certainty whether the vacated convictions influenced the circuit court in imposing sentences on the remaining convictions.

■ Our review of the record in the present case reveals absolutely no suggestion that the five-year sentence for the now-vacated conviction of aggravated battery had any bearing on the 20-year sentence imposed for the three convictions for the Class X felony of aggravated battery with a firearm. Moreover, the trial court imposed no separate sentence for the conviction of armed violence but instead included the armed violence count with the 20-year term for the three counts of aggravated battery with a firearm. Thus, we find it unnecessary to remand this cause for resentencing.

For all the foregoing reasons, we affirm the convictions and sentences for aggravated battery with a firearm and aggravated discharge of a firearm. We vacate the armed violence and aggravated battery convictions and the five-year sentence for aggravated battery.

Affirmed in part and vacated in part.

TULLY, P.J., and CERDA, J., concur.