2020 IL App (1st) 161746-U

No. 1-16-1746

Order filed January 17, 2020

Fifth Division

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 00435 |
| | ) | |
| STEPHAN CAPLES, | ) | Honorable |
| | ) | Stanley J. Stacks, |
| Defendant-Appellant. | ) | Judge, Presiding. |
| | ) | |

_____

JUSTICE HALL delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

ORDER

¶ 1   *Held*: Defendant's conviction and sentence for aggravated battery with a firearm affirmed where he forfeited review of the trial court's bar of the victim's juvenile record as impeachment evidence; the trial court did not improperly limit his cross examination of a witness; the State's closing argument did not improperly shift the burden of proof; instructions for a lesser-included offense were not required; and his sentence was not excessive.

¶ 2   Following a jury trial, defendant Stephan Caples was convicted of aggravated battery

with a firearm (720 ILCS 5/12–3.05(e)(1) (West 2012)) and sentenced to 14 years'

imprisonment. On appeal, defendant contends that: (1) the trial court erred by denying his request to impeach the victim, T.B., with his juvenile record; (2) the trial court improperly denied his right to cross-examine Derrick Caldwell (Caldwell) about his possible bias and incentive to lie; (3) the State's closing argument shifted the burden of proof to him by improperly commenting on his decision not to testify; (4) the trial court erred in denying his request for a jury instruction on aggravated discharge of a firearm as a lesser-included offense of aggravated battery with a firearm; and (5) his 14-year sentence was excessive for a first-time felony offense and should be reduced. For the following reasons, we affirm.[1]

¶ 3                                  BACKGROUND

¶ 4      As a result of a shooting on November 9, 2013, in Chicago, defendant was charged with six counts of attempted first degree murder, one count of aggravated battery with a firearm and two counts of aggravated discharge of a firearm. The State subsequently nol-prossed the aggravated discharge of a firearm counts and proceeded to trial on the remaining charges.

¶ 5      The following facts adduced at trial are not in dispute.

¶ 6      The State called T.B., who was a minor at the time of the shooting. Prior to T.B. taking the stand, defendant requested to use T.B.'s previous juvenile adjudication for impeachment, and the following colloquy took place:

          "MS. PRUSAK [(DEFENSE COUNSEL)]: Judge, I apologize

          for the timeliness of this, but I was given criminal history of the

          witnesses as the jurors were being bought [*sic*] out today.

          THE COURT: Okay.

---

[1] This case was assigned to the authoring justice on February 5, 2019, but was not fully briefed until February 13, 2019. The disposition was first circulated to the panel members on January 10, 2020.

MS. PRUSAK: Upon review, I see that this witness had a juvenile adjudication for residential burglary.

THE COURT: Okay.

MS. PRUSAK: It is our position that it should be allowed for impeachment purposes only.

THE COURT: I don't believe it is.

MR. MOORE [(ASSISTANT STATE'S ATTORNEY)]: Juvenile convictions don't come in, your Honor.

THE COURT: No, they don't. I agree with the State. Anything else?

MS. PRUSAK: No."

¶ 7    T.B. testified that at approximately 8 p.m. on November 9, 2013, he was standing with a group of friends on the 8600 block of South Lowe Avenue. A red Chevrolet Camaro pulled up and two men got out. The two men spoke to the group but T.B. could not hear what they said. The two men then returned to the car and left.

¶ 8    A half hour later, T.B. and four or five friends from the group were walking on the 8900 block of South Union Street when the same Camaro pulled up approximately five or six feet away. The passenger, who T.B. identified as defendant, rolled down his window and asked the group if they knew where to get weed. When they answered in the negative, T.B. saw defendant pull out a silver semi-automatic pistol and shoot at the group. The group scattered but T.B. was shot in the ankle and fell to the ground. After T.B. was on the ground, he was shot again in the back of his thigh before the shots stopped and the Camaro drove off.

¶ 9    T.B. was treated for his injuries at Christ Hospital, including surgery to repair a broken leg, insertion of a permanent metal rod from his hip to his knee, and four screws.

¶ 10    Derrick Caldwell testified for the State that on November 9, 2013, he was driving his red Camaro near 8900 South Lowe Avenue when he saw defendant. He and defendant were acquaintances; he knew that defendant's uncle recently passed away and stopped to give his condolences. Caldwell invited defendant into his car and the two drove to a liquor store. After leaving the store, the two drove to Caldwell's grandmother's house at 89th Street and South Lowe Avenue. When they arrived, Caldwell noticed a group of four or five younger men standing on the nearby corner. Defendant told Caldwell that he thought that was the group who shot his uncle. Caldwell stepped out of his car and questioned the group to "diffuse the situation;" the group stated that they knew nothing about the shooting. Afterwards, Caldwell went inside, then returned to the car. Caldwell then drove defendant to a relative's house so defendant could pick up some money, and he waited in the car while defendant went inside for a few minutes before he returned to the car.

¶ 11    As Caldwell drove back towards his grandmother's house, he and defendant noticed a few men from the group they saw earlier walking near 8800 South Union Avenue. Defendant told Caldwell to slow the car down as it approached the group. Defendant rolled down the window, asked the group for weed, pulled out a gun and started shooting. Caldwell testified that he pulled off when defendant started shooting. When he asked defendant why he shot at the group, defendant responded "my bad" and that he should not have shot at them.

¶ 12    Caldwell then drove defendant back to his relative's house and again waited in the car while defendant went inside. When defendant returned, they drove back to Caldwell's

grandmother's neighborhood, and the police pulled him over. Caldwell stated that he was hysterical and aggravated when he was pulled over. The police took defendant's information but let him go and arrested Caldwell, although he was released the next day. On November 19, 2013, the police arrived to Caldwell's home with a search warrant for his home and car, and he was taken to the station for questioning.

¶ 13     On cross-examination, Caldwell testified that he thought he was arrested and told conflicting stories during his police interviews to "protect Stephan." During his first interview, Caldwell told police that he and defendant were cruising around all day until Officer Richardson pulled them over. During his second interview, Caldwell stated that he was out with defendant and picked up defendant's cousin, who spoke to the group and shot at them. During his third interview, Caldwell stated that defendant was the shooter as he testified at trial. During Caldwell's cross-examination, the trial court sustained the State's objections to questions about whether police arrested and charged Caldwell with any crimes related to the shooting.

¶ 14     Chicago Police officer Monica Richardson testified that she was assigned to the post-shooting investigation. At approximately 9:30 p.m., she saw a red Camaro matching the description of the suspect vehicle run a stop sign. She curbed the car and arrested the driver after he exited in an aggressive manner. She testified that she did not arrest defendant because the victim was in surgery and the officers had no information at that time as to the shooter.

¶ 15     Detective Joseph Madden testified that after the shooting, he and his partner Joseph McGuire interviewed the victim at the hospital. The victim described the Camaro, and gave descriptions of the driver and passenger.

¶ 16    After Caldwell's initial arrest, the officers returned to the hospital on November 10, 2013, and showed the victim a photo array which included defendant and Caldwell. The victim identified defendant as the passenger who shot at his group and Caldwell as the driver.

¶ 17    On November 19, 2013, police went to Caldwell's house with a search warrant for his house and car. During the search, police found a gun case for a validly-owned gun, and a receipt for another gun that Caldwell indicated was stolen. After the searches, police arrested Caldwell for the shooting, and he gave police conflicting accounts of the shooting. The next day, police released Caldwell and issued an investigative alert for defendant's arrest.

¶ 18    On December 2, 2013, the victim identified defendant as the shooter from a lineup. Defendant was then arrested and charged with the shooting.

¶ 19    At the close of the State's evidence, the parties stipulated that police recovered six cartridges that were fired from the same firearm at the scene. The State entered its exhibits into evidence and rested.

¶ 20    Defense counsel's motion for directed finding was denied and the defense rested without presenting any evidence or witnesses.

¶ 21    During the jury instruction conference, defendant requested that the trial court give instructions for aggravated discharge of a firearm as a lesser-included offense of both attempted murder and aggravated battery with a firearm. Defendant asserted that aggravated discharge of a firearm only required knowingly discharging a firearm and that based on the evidence presented at trial, the jury was entitled to that instruction as a less serious option. Defendant further stated that the state of mind for aggravated discharge of a firearm was different than the state of mind

for aggravated battery, and there was no evidence presented that defendant shot in T.B's direction with the intent to specifically hurt him.

¶ 22    The trial court responded that aggravated discharge of a firearm was not a lesser-included offense of either aggravated battery with a firearm or attempted murder because the shots fired were not "just a shot in someone's direction. It was a shot that actually hit the guy twice." After the court requested the State's position, the State responded that the evidence at trial specified that shots were fired at the victim and he was struck twice.

¶ 23    The court rejected defendant's request, and stated that it agreed with the State that the trial evidence did not support the instruction. The court further stated that the defendant could argue in closing argument that he did not have the intent to shoot T.B., but that argument did not mean that aggravated discharge with a firearm was a lesser-included offense to aggravated battery with a firearm or attempted murder, but a separate offense.

¶ 24    During closing arguments, defense counsel contended that Caldwell had motive to lie to keep himself off the "hotplate." In rebuttal, the State argued that the jury could only consider the presented evidence and should not be confused by "anything else." The following colloquy occurred during the State's closing:

> "MR. MOORE [(ASSISTANT STATE'S ATTORNEY)]: [A]nd
>
> he's confronted with his own inconsistencies, Derrick Caldwell finally
>
> tells the truth, Yeah, [*sic*] it was Stephan Caples. It's Stephan Caples.
>
> He's the shooter.
>
> There's no evidence that indicates otherwise up here. Did
>
> you hear anything up here that indicates anything else than the

defendant being the shooter?"

MS. PRUSAK [(DEFENSE COUNSEL)]: Judge, I object to that.

THE COURT: Pardon?

MS. PRUSAK: The burden is not on us. I object to that.

THE COURT: He wasn't shifting the burden at all. He said

from up here. Overruled."

¶ 25 The jury convicted defendant of aggravated battery with a firearm. Defendant filed a motion for new trial, contending that: he was not proven guilty beyond a reasonable doubt; the trial court erred in preventing him from using T.B.'s juvenile adjudication for impeachment and restricting cross-examination of Caldwell for bias and motive; and the trial court erred in denying a jury instruction for aggravated discharge of a firearm. The trial court summarily denied the motion.

¶ 26 At defendant's sentencing hearing, the State presented evidence in aggravation that defendant had a juvenile record and he planned the shooting by retrieving a gun prior to it. In mitigation, defendant presented positive letters from his family; evidence that he had two young children who depended on him; and his lack of any adult criminal history or gang involvement. The trial court stated that it considered all presented evidence and sentenced defendant to 14 years' imprisonment. This timely appeal followed.

¶ 27                                    ANALYSIS

¶ 28 On appeal, defendant contends that: (1) he was denied a fair trial when the trial court denied his request to impeach T.B. with his juvenile record; (2) the trial court improperly denied his right to cross-examine Caldwell about his possible bias and incentive to lie; (3) the State's

closing argument shifted the burden to him by improperly commenting on his decision not to testify; (4) the trial court erred in denying an instruction on aggravated discharge of a firearm as a lesser included offense of aggravated battery with a firearm; and (5) his 14-year sentence was excessive for a first-time felony offense and should be reduced.

¶ 29                                A. Limitation of Cross-Examination

¶ 30    Defendant's first two issues on appeal relate to his cross-examinations of T.B. and Caldwell. Defendant contends that the trial court improperly limited his cross-examination of T.B. when it denied his request to impeach him with his juvenile record because it failed to conduct the balancing test mandated by Illinois Rule of Evidence 609(d) (eff. Jan. 1, 2011) in its ruling. He also contends that the court improperly sustained the State's objections to defense counsel's questions to Caldwell about whether he was arrested or charged in connection to this case, thus preventing counsel from exploring whether Caldwell had potential bias and incentive to lie. Defendant asserts that because the State's case rested mainly upon T.B.'s credibility, and because Caldwell was the only witness to testify to the events of the entire evening and provide defendant's alleged motive for the shooting, these errors were not harmless.

¶ 31    The record indicates that defendant made no offer of proof at trial in connection with these lines of questioning, and the State contends that defendant forfeits review of these two issues. See *People v. Staake*, 2017 IL 121755, ¶ 51. We agree.

¶ 32    A defendant's right to confront witnesses against him, including cross-examination to show a witness' interest, bias, prejudice or motive to testify falsely, is guaranteed by both the federal and state constitutions. U.S. Const., amends. VI, XIV; Ill. Const.1970, art. I, § 8. The "purpose of cross-examination is to introduce matters which explain, modify or discredit any of

the evidence introduced on direct examination." *People v. Adams*, 111 Ill. App. 3d 658, 664 (1982). A party may use character evidence as a general attack on a witness' credibility and cross-examination evidence of the witness' prior conduct will be relevant and admissible as long as it bears on his credibility. *People v. Di Maso*, 100 Ill. App. 3d 338, 342 (1981). Convictions may be used to attack a witness' character, but "proof of arrests, indictments, charges or actual commission of crime are not admissible." *People v. Lucas*, 151 Ill. 2d 461, 491 (1992).

¶ 33   A defendant's rights under the confrontation clause for cross-examination are not absolute; the confrontation clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent the defense desires. *People v. Leak*, 398 Ill. App. 3d 798, 823-24 (2010) (citing *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). The trial court has broad discretion to limit cross-examination to preclude prejudice, witness harassment, repetitive and irrelevant questioning (*People v. Tabb*, 374 Ill. App. 3d 680, 689 (2007)), or to exclude evidence of bias that is too remote or uncertain (*People v. Prevo*, 302 Ill. App. 3d 1038, 1048 (1999)). Unless the defendant can show his or her proposed line of questioning was not based on a remote theory and that the limitation resulted in manifest prejudice to him, "a court's ruling limiting the scope of examination will be affirmed." *Tabb*, 374 Ill. App. 3d at 689.

¶ 34   When a line of questioning is objected to or denied by the trial court, the defendant must ordinarily set forth an offer of proof to convince the trial court to allow the testimony. *People v. Burgess*, 2015 IL App (1st) 130657, ¶ 47. The purpose of an offer of proof is to inform the trial court, opposing counsel and a reviewing court of the nature and substance of the evidence sought to be introduced (*Leak*, 389 Ill. App. 3d at 822) and for the reviewing court to determine if the

exclusion of evidence was proper (*Tabb*, 374 Ill. App. 3d at 689). When it is not clear what a witness would say, or what the basis would be for saying it, the offer of proof must be considerably detailed and specific. *Leak,* 398 Ill. App. 3d at 822. A formal offer of proof is not typically required, however an informal offer of proof involving counsel's summary of what the proposed evidence might prove may be sufficient if specific and not based on speculation or conjecture. *Tabb*, 374 Ill. App. 3d at 689. It is well-settled that the key to preserving for review an error in the exclusion of evidence is an adequate offer of proof in the trial court and a defendant's failure to make such an offer of proof results in forfeiture of the issue. *Staake*, 2017 IL 121755, ¶ 51.

¶ 35                    1. Judicial Notice of T.B.'s Juvenile Adjudication

¶ 36    In his reply brief, defendant asserts that an offer of proof was not needed to preserve review of the trial court denying him the right to impeach T.B. with his juvenile adjudication. He contends that we can take judicial notice of T.B.'s juvenile adjudication and purports to provide this court with the particulars of T.B.'s adjudication. Defendant, however, did not file a motion requesting judicial notice, nor was the adjudication included in the record on appeal. He is now purporting to make his offer of proof under the auspices of judicial notice, and contends that we can take notice of public documents included in the records of the juvenile court because the records contain "readily verifiable facts." He cites *May Department Stores Co. v. Teamsters Union Local No. 743*, 64 Ill. 2d 153 (1976), in support.

¶ 37    In *May Department Stores*, our supreme court held that it could take judicial notice of letters from an administrative tribunal in related proceedings because the plaintiff included them

in the record on appeal, and they were public documents that could be easily verified in the records of the other administrative courts. *May Department Stores*, 64 Ill. 2d at 159.

¶ 38    However, defendant's reliance on *May Department Stores* is misplaced. Here, defendant improperly attempts to provide the details of T.B.'s adjudication in his reply brief without a motion requesting its inclusion or providing this court with the adjudication in violation of Rule 341(h)(7) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"). Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). Additionally, defendant mistakenly contends that T.B.'s juvenile adjudication is of public record; however, the Juvenile Court Act of 1987 (705 ILCS 405/5-150 (West 2012), which governs the admissibility of juvenile records in other proceedings, generally presumes juvenile adjudications to be confidential and not to be public documents. See *In re J.R.*, 307 Ill. App. 3d 175, 180 (1999). Further, the record reflects that defendant did not present T.B.'s juvenile adjudication to the trial court. This court has previously held that if a party wishes to have a fact judicially noticed on appeal, he must bring the matter to the lower court's attention on the record (*People v. Barham*, 337 Ill. App. 3d 1121, 1129 (2003)); a reviewing court will not take judicial notice of new critical evidentiary material that was not presented to, and not considered by, the fact finder (*People v. Boykin*, 2013 IL App (1st) 112696, ¶ 9). Thus, defendant cannot present T.B.'s adjudication to this court under judicial notice.

¶ 39                            2. Offer of Proof Exceptions under *Lynch*

¶ 40    Defendant also cites to *People v. Lynch,* 104 Ill. 2d 194 (1984), in his reply brief to support his contention that he did not need a formal offer of proof to preserve review of these two issues. As to T.B., defendant asserts that the offer of proof requirement was relaxed because

trial court misapplied the law that T.B.'s juvenile adjudication was *per se* inadmissible for impeachment and the court's demeanor towards defense counsel prevented an opportunity for him to make an offer of proof. See *Lynch*, 104 Ill. 2d at 204. As to Caldwell, defendant asserts that the context, circumstances and questions themselves clearly indicated the purpose and substance of what defendant wished to question Caldwell about. See *Lynch*, 104 Ill. 2d at 204. Defendant's reliance on *Lynch* is misplaced.

¶ 41     In *Lynch*, as part of his self-defense theory, the defendant sought to introduce evidence on cross-examination of the State's witness of the deceased victim's prior convictions. *Lynch*, 104 Ill. 2d at 199. The State objected, and the trial court ruled that the victim's prior convictions were inadmissible and irrelevant. *Lynch*, 104 Ill. 2d at 199. On appeal, the appellate court concluded that the defendant could not attack the "exclusion of the character evidence because he had failed to make an offer of proof." *Lynch*, 104 Ill. 2d at 202. Our supreme court reversed, and held that no formal offer of proof was necessary because the trial court's hostility towards defendant prevented an opportunity to make such an offer. *Lynch*, 104 Ill. 2d at 202. The court also held that no offer of proof was necessary and the defendant could attack exclusion of the conviction evidence because the State's discovery evidence provided the defendant with the knowledge of the victim's three recent convictions; the court only needed to decide the legal issue of whether evidence of those convictions was admissible. *Lynch*, 104 Ill. 2d at 202. The court continued that if the question showed the evidence's purpose and materiality, was in the proper form and clearly elicited a favorable answer, then a formal offer of proof was not necessary unless the trial court asked for one. *Lynch*, 104 Ill. 2d at 202.

¶ 42    We find *Lynch* to be distinguishable because "[t]he purpose of an offer of proof is to enable the courts to decide the case on adequate facts" (*Lynch*, 104 Ill. 2d at 202), and in that case, the court had all facts needed to determine whether the impeachment evidence was admissible without an offer of proof.

¶ 43    Here, unlike in *Lynch*, there is no evidence that the trial court was hostile towards defense counsel nor that he had no opportunity to present evidence to the trial court about T.B.'s juvenile adjudication. After the trial court ruled that juvenile adjudications were *per se* inadmissible, defendant had an opportunity to request a sidebar or further discuss why T.B.'s purported conviction for residential burglary was important for impeachment purposes when the court asked, "Anything else[,]" but defendant did not. This failure to make any offer of proof left the trial court without information as to the nature of the juvenile offense or any opportunity to revisit the ruling. See *People v. Bowman*, 2012 IL App (1st) 102010, ¶ 36.

¶ 44    As to Caldwell's cross-examination, unlike in *Lynch*, defense counsel's questions as a whole did not show the purpose and materiality of the evidence, were not in a proper form and did not admit a favorable answer. In the 15 objections made during Caldwell's cross-examination, the trial court first overruled the State's objection to a question asking if Caldwell had been arrested in connection with this shooting. The State's 14 later objections concerning whether Caldwell was charged with aggravated battery or as an accessory were sustained. First, the questions were not in a proper form under the *Lynch* standard because defendant's questions attempted to impeach Caldwell with evidence of his arrests, which is not admissible on cross-examination to attack a witness' character. See *Lucas*, 151 Ill. 2d at 491; *Lynch*, 104 Ill. 2d at 202-03.  Second, after the trial court sustained the State's later objections, defendant did not ask

for a sidebar or make a request to show how his questions about whether Caldwell was charged with any crimes materially showed that Caldwell had a motive to lie. *Lynch*, 104 Ill. 2d at 202. This failure to follow the *Lynch* guidelines to admit the evidence without an offer of proof or to make an offer of proof, left the trial court without the necessary facts to reconsider its ruling or determine whether the evidence was directly related to the issue of Caldwell's potential bias or motive to falsely testify. See *Bowman*, 2012 IL App (1st) 102010, ¶¶ 53-54.

¶ 45 Accordingly, we find that the *Lynch* exceptions to the offer of proof requirements do not apply. As defendant did not make an offer of proof of the impeachment evidence he sought to have admitted, he has therefore forfeited review of whether T.B.'s juvenile adjudication was admissible for impeachment on cross-examination, and whether the trial court improperly sustained the State's objections to his questions to Caldwell about his potential bias or incentive to lie. See *Staake*, 2017 IL 121755, ¶¶ 51-53.

¶ 46                                3. Plain Error

¶ 47 Further, although this court may apply the doctrine of plain-error to address forfeited errors, this is not a proper case to invoke it. We can consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. *People v. Hudson*, 228 Ill. 2d 181, 191 (2008). Defendant has made no such argument or showing. Additionally, even if we applied plain error review, the first step is to determine whether any error occurred. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009). However, defendant's failure to make an offer of proof at trial precludes our ability to take the first step. *People v. Shenault*, 2014 IL App (2d) 130211, ¶ 13. As such, we will honor the procedural default.

¶ 48                    B. Improper Burden Shifting

¶ 49    Defendant next contends that the State used the phrase "up here" twice during its rebuttal argument in reference to evidence presented during the trial which could be interpreted as shifting the burden of proof from the State to him. He also contends that it was an improper comment on defendant's decision not to testify. He further asserts that the trial court improperly overruled his objection to the comments. He claims that, because of the tenuous nature of the State's case and its efforts to distract the jury from Caldwell's unreliable testimony, these errors were not harmless beyond a reasonable doubt. He contends that we should remand for a new trial.

¶ 50    Defendant objected to two closely related remarks the State made in rebuttal closing argument after stating that Caldwell identified defendant as the shooter: "There's no evidence that indicates otherwise up here. Did you hear anything up here that indicates anything else than the defendant being the shooter?" Defendant objected and reminded the court that the burden was not on him. The trial court overruled defendant's objections to the State's remarks, stating, "[h]e wasn't shifting the burden at all. He said from up here. Overruled."

¶ 51    We must determine whether the comments made by the State during its rebuttal constituted error.

¶ 52    While a prosecutor is allowed wide latitude during closing argument (*People v. Wheeler*, 226 Ill. 2d 92, 123 (2007)), a party does not have the right to make closing statements that go beyond the evidence presented, the inferences that can be made, or to misstate the law (*People v. Woolely*, 178 Ill. 2d 175, 209 (1997)). The State can, however, point out in closing arguments that its evidence has not been contradicted. *People v. Keene*, 169 Ill. 2d 1, 21 (1995). The State

can also comment on evidence that defendant presents. *People v. Jackson*, 2017 IL App (1st) 142879, ¶ 61.

¶ 53    A defendant has the constitutional right not to testify on his own behalf, and the State may not make direct or indirect comments on whether defendant exercised that right. *People v. Herrett*, 137 Ill. 2d 195, 210–11 (1990) (citing *Griffin v. California*, 380 U.S. 609, 613 (1965)). A reviewing court should consider whether the prosecutor's comment was "intended or calculated" to direct the jury's attention to the defendant's decision not to testify. *Jackson*, 2017 IL App (1st) 142879, ¶ 60. If the State is motivated to demonstrate the absence of any evidentiary basis for defense counsel's argument rather than for a purpose of calling attention to the fact that defendant had not testified, such comments in closing argument will be permissible. *People v. Smith*, 402 Ill. App. 3d 538, 543 (2010). Moreover, a defendant cannot ordinarily claim error where the prosecutor's remarks are in reply to, and may be said to have been invited by, defense counsel's argument. *Smith*, 402 Ill. App. 3d at 543.

¶ 54    Remarks made during closing arguments must be examined in the context of both parties' arguments and must always be based upon the evidence presented or reasonable inferences to be drawn therefrom. *People v. Coleman*, 201 Ill. App. 3d 803, 807 (1990). "Because the trial court is in a better position than a reviewing court to determine the prejudicial effect of any remarks, the scope of closing argument is within the trial court's discretion" (*People v. Hudson*, 157 Ill. 2d 401, 441 (1993)), and we review the trial court's overruling of a defendant's objection to the prosecutor's closing remarks under an abuse of discretion standard (*People v. Cook*, 2018 IL App (1st) 142134, ¶ 64).

¶ 55    During its closing argument, the State discussed T.B.'s testimony, including that T.B. saw defendant and Caldwell in the Camaro and identified them both in a lineup. The State also reviewed Caldwell's testimony at trial which stated that defendant was the shooter. The State then described the attempted first degree murder and aggravated battery charges against defendant, and described the trial testimony and evidence it believed established each element of the offenses.

¶ 56    In her closing argument, defense counsel stated that Caldwell had a motive to lie to protect himself, keep himself off the "hotplate" and hide what really happened that day; and that the police could not have gotten such a clear description from T.B. about defendant and Caldwell based on T.B.'s brief interaction with them.

¶ 57    In rebuttal, the State responded that the jury could only consider the evidence that it heard on the witness stand, and that they should not "be confused by anything else." The State further stated that defendant was the shooter, based on Caldwell's testimony, and said, "there's no evidence that indicates otherwise up here."

¶ 58    Viewed in context of both parties' arguments, it is clear that the State's comments were not a comment on defendant's decision not to testify because the State never mentioned defendant or his failure to testify. The State's closing argument focused on summarizing the testimony of T.B., Caldwell, and other witnesses, and how that evidence established the required elements for the jury to convict defendant of attempted first-degree murder and aggravated battery with a firearm. The State's comments were a direct response to defense counsel's arguments that Caldwell had a motive to lie when he testified at the trial, and we find that defendant invited the State's rebuttal remarks that there was nothing "up here" in evidence to

support defendant's conclusions. We conclude that the State did not make improper remarks during closing argument that shifted the burden to defendant. Accordingly, the trial court did not abuse its discretion in overruling defendant's objection. *Cook*, 2018 IL App (1st) 142134, ¶ 64.

¶ 59                    C. Jury Instructions on Lesser-Included Offense

¶ 60    Defendant next contends that the trial court erred when it refused his request to instruct the jury on aggravated discharge of a firearm as a lesser-included offense of aggravated battery with a firearm. As previously noted, the State nol-prossed the charge of aggravated discharge of a firearm prior to trial, and defendant was tried only on attempted murder and aggravated battery with a firearm. Defendant asserts that the trial court improperly denied his request because the evidence in this case would have allowed the jury to rationally find him guilty of aggravated discharge of a firearm as a lesser-included offense of aggravated battery and acquit him of the greater offense.

¶ 61    "Giving a lesser-included offense instruction provides an important 'third option' to the jury because '[i]f a jury believes that a defendant is guilty of something, but uncertain whether the charged offense has been proved, the jury might convict the defendant of the lesser offense rather than convict or acquit the defendant of the great offense.' " *People v. Willett*, 2015 IL App (4th) 130702, ¶ 58 (quoting *People v. Ceja*, 204 Ill. 2d 332, 359 (2003)).

¶ 62    A defendant is entitled to a lesser-included offense instruction only if the evidence at trial is such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater. *People v. Medina*, 221 Ill. 2d 394, 405 (2006); *People v. Garcia*, 188 Ill. 2d 267, 284 (1999). See also *Schmuch v. United States*, 485 U.S. 705, 716 n. 8 (1989); *Keeble v. United States*, 412 U.S. 205, 208 (1973). That evidentiary prerequisite must be met before a right to

have the jury instructed on a lesser-included offense arises. *Medina*, 221 Ill. 2d at 405; *People v. Baldwin*, 199 Ill. 2d 1, 13 (2002).

¶ 63    An "included offense" is an offense "established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2-9(a) (West 2012). Our supreme court has identified three possible approaches to determining whether a lesser offense is included in a greater offense: (1) the abstract-elements approach; (2) the charging-instrument approach; and (3) the factual approach. *People v. Miller*, 238 Ill. 2d 161, 166 (2010).

¶ 64    As a reviewing court should only examine whether trial evidence supported a conviction on the lesser offense after determining whether the uncharged offense is a lesser-included offense of a charged crime (*People v. Kolton*, 219 Ill. 2d 353, 361 (2006)), we will first determine if the nol-prossed aggravated battery with a firearm charge is a lesser-included offense of aggravated battery with a firearm.

¶ 65    *People v. Banks*, 260 Ill. App. 3d 464 (1994), a case cited by the State, is instructive. In that case, the defendant was convicted of three counts of aggravated battery with a firearm for shooting three victims and three counts of aggravated discharge of a firearm for shooting in the direction of the same three victims. On appeal, we concluded aggravated discharge of a firearm was not a lesser-included offense of aggravated battery, and they were distinct offenses. *Banks*, 260 Ill. App. 3d at 472. Specifically, we stated:

> "There is no dispute that the two offenses at issue
>
> are distinct and the statutory scheme for the offenses does not
>
> establish a lesser included offense. Aggravated discharge of a

firearm is distinct to and not a lesser included offense of aggravated

battery with a firearm because conviction for aggravated battery

with a firearm requires *knowingly causing injury* with firearm,

while conviction for aggravated discharge of a firearm requires

discharge of firearm *in the direction* of another person."

(Emphasis in original.) *Banks*, 260 Ill. App. 3d at 472.

¶ 66    Similarly, in this case, the trial court found that the trial evidence did not support a jury instruction for aggravated discharge of a firearm because T.B. was shot twice, thus constituting aggravated battery, and that the record indicated that defendant fired additional shots towards the group. By continuing to shoot once T.B. was on the ground, defendant knowingly caused his injury; this action was a distinct act from shooting in T.B.'s direction because knowingly causing injury requires a different mental state. See *Banks*, 260 Ill. App. 3d at 470. We find that the trial court was not required to provide a jury instruction for aggravated discharge of a firearm because it is a separate and distinct offense from aggravated battery with a firearm. *Banks*, 260 Ill. App. 3d at 472.

¶ 67                                    D. Excessive Sentence

¶ 68    Finally, defendant contends that his 14-year sentence was excessive for a first time felony offense in light of his substantial mitigating evidence: he has two children, a close relationship with his family, and he got his GED after leaving high school.

¶ 69    In imposing a sentence, a trial court must carefully consider all factors in aggravation and mitigation. *People v. Jackson*, 357 Ill. App. 3d 313, 329 (2005). A trial court has broad discretion in imposing a sentence because it is generally in a better position than a reviewing

court to determine a proper sentence. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Whether a sentence is proper is reviewed for an abuse of discretion. *People v. Geiger*, 2012 IL 113181, ¶ 27. When the trial court imposes a sentence within the statutory guidelines for the offense the defendant was convicted of, a reviewing court presumes the sentence was not an abuse of the trial court's discretion (*Bowman*, 2012 IL App (1st) 102010, ¶ 72) unless it is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense" (*Stacey*, 193 Ill. 2d at 210).

¶ 70    Defendant was convicted of aggravated battery with a firearm, a Class X felony punishable by a 6- to 30-year sentence. 730 ILCS 5/5-4.5-25(a) (West 2012). At sentencing, the trial court specifically stated that it considered the various letters from members of defendant's family and that defendant had no prior adult record. The court further stated that while it had compassion for defendant's children, defendant's crime was based on retaliation that resulted in serious injury. Defendant's sentence is eight years more than the minimum, which is not "manifestly disproportionate to the nature of the offense" (*Stacey*, 193 Ill. 2d at 210), because T.B. was seriously injured by defendant's actions. Thus, we find that defendant's sentence was not excessive and it was not an abuse of discretion for the court to sentence him to 14 years.

¶ 71                                   CONCLUSION

¶ 72    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 73    Affirmed.